MELVIN M. JOHNSON & another, trustees, *vs.* VIRGIL C. BRINK, executor, & others.

Suffolk. November 12, 13, 1929. — June 2, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Trust,* Construction of instrument creating trust, Capital and income, Interest on advancements from income to principal for preservation of trust property. *Capital and Income. Devise and Legacy,* Contingent, Vested, Remainder, Spendthrift clause. *Words,* "If living," "Either."

Substantially all of the property held in a trust under a will was a parcel of real estate. The other property was insufficient to pay cash charges against the principal of the trust, and, from time to time over a period of several years, the trustee advanced sums of money from the income

account to the principal account. These advances were necessary and for the best interests of the life tenant and the remainderman; and all were shown in the trustee's accounts, which were assented to by the life tenant and allowed. No interest on the advances was allowed to the life tenant in the accounts. Upon a bill in equity for instructions, filed by the trustee at a subsequent time when he was making arrangements to repay the advances, it was *held*, that the omission of interest in the accounts had been made intentionally by the trustee with the assent of the life tenant; and that the trustee should not transfer to the income account any sum as interest.

A testator by his will gave a certain legacy to the husband of one of his two daughters payable at certain specified times after the testator's death, and also a second legacy upon the death of either of his daughters, "the same to be taken from the principal of the trust fund which I have established for said . . . [daughters]." Such trust was established from the residue of the testator's estate to pay the income to the two daughters during their lives and, at the death of either of them, to pay "from the trust estate" certain legacies "hereinbefore given," one of which was the second legacy to the daughter's husband, and also to pay to him therefrom a certain further sum in case he were living at the death of either daughter without issue. He survived the testator but died before either of the daughters. *Held*, that the second legacy to the husband was not given upon the contingency of the death of either of the daughters during his life: it was a vested legacy; and, upon the death of one of the daughters, the executor of his will was entitled to receive it from the trustee.

A trustee leased a parcel of land for a certain term. During that term the lessee, desiring to surrender the lease, procured a new lessee for the remainder of the term at a certain rent and paid to the trustee a sum which, with the new rent, was the equivalent of the rent which the trustee would have received under the previous lease for the unexpired portion of its term. In consideration thereof, the trustee released the previous lessee from liability under the previous lease. *Held*, that the sum so received from the previous lessee should not be distributed to the persons entitled to income at the time of the surrender: it was income which should be held and distributed periodically, during what remained of the term of the previous lease, to those persons who would have been entitled to income at the various dates of distribution during that time if there had been no surrender.

A will established a trust, the income of which was payable to certain persons for life and thereafter, in a certain contingency, to certain charitable corporations and associations. The will contained a spendthrift clause applicable to the gifts to all beneficiaries. During the lives of the life beneficiaries, each corporation or association, for the purpose of creating a convenient conduit of title to the trust property, executed an agreement and declaration of trust establishing a certain trust designated by the testator's name. Upon a bill in equity for instructions by the trustee under the will, it was *held*, that the spendthrift clause did not apply to nor prevent the establishment of such charitable trust; and the trustee was instructed that, upon the happen-

ing of the contingency, he should transfer to that trust the share to which each corporation or association then would be entitled.

A will established a trust to pay the income to the testator's two daughters during their lives and, upon the death of either of them, to hold one half of the trust property for the benefit of the survivor and the other half for the benefit of the issue of the deceased daughter if she should leave issue; and "In case either of my said daughters . . . shall die leaving no issue . . . then the portion of the trust estate which . . . would be held for and go to such issue if any, . . . shall be . . . paid in equal shares to . . . [a certain man], if living, and to . . . [a certain charity]." The man survived the testator and died before either of the daughters. Each daughter died without issue. Upon a bill in equity for instructions after the death of the second daughter, it was *held*, that

(1) The words "if living" were the equivalent of "then living";

(2) The event which determined the man's interest was not one which inevitably must happen in the course of time; and the man's interest was not vested;

(3) The man's next of kin were not entitled to the share which would have passed to him if he had survived the first daughter;

(4) The charity was not entitled to that share, because the gifts to the man and the charity were individual and did not create a joint tenancy;

(5) The will contained no provisions for the contingency which happened, the death of the man before that of either daughter without issue; and said share must be distributed as intestate property to the next of kin of the testator;

(6) The word "either" should not be construed to mean "any" or require that the property remaining to be distributed upon the death of the second daughter without issue should pass to the man or to the charity;

(7) The testator made no specific disposition of such remaining property;

(8) There was no implied gift over thereof to the man and the charity in addition to their other shares at the death of the first daughter;

(9) Such remaining property was intestate property.

BILL IN EQUITY for instructions, filed in the Supreme Judicial Court for the county of Suffolk on December 13, 1928, by the trustees under the will of John H. Collamore, late of Boston.

The bill was heard by *Wait*, J., who found that its allegations were true, and found certain other facts. Material facts and portions of the will are stated in the opinion. Virginia D. Collamore, a defendant, died during the pendency of the suit before this court, and the executor under her will was

admitted as a party defendant. The suit was reserved by the single justice for determination by the full court.

*M. M. Johnson*, stated the case.

*J. W. Black, Jr.*, for Master, Wardens and Members of the Grand Lodge of Masons in Massachusetts, and others.

*D. Greer*, for M. M. Johnson, trustee.

*T. F. Quinn*, for Isaac N. Learned and another, executors.

*L. E. Green,* (*D. C. Linscott* with him,) for Virginia D. Collamore.

*K. A. Sanderson*, for Olivet Commandery and another, submitted a brief.

PIERCE, J. A single justice of this court reserved and reported "the case for consideration and determination by the full bench." The questions of law presented are (1) whether there should be transferred to income account any amount for interest upon certain advances from income to capital; (2) whether upon the death of Maria L. H. Learned or of Virginia D. Collamore, whichever should first occur, the sum of $15,000 should be paid to the personal representative of Francis M. Learned, he having died before the happening of that event; (3) whether a prepayment in lieu of rent upon the surrender of a term extending beyond the life of an equitable life tenant should be apportioned between such equitable life tenant and the remainderman or whether said sum is to be distributed as income to the persons thereto entitled at periods during which the original lease was to run, and if so, at what periods and in what proportions; or whether any part of said sum or all of it is to be treated as capital of the trust fund; (4) whether, where contingent remaindermen under a spendthrift trust assign to a common assignee in trust, the trustee of the spendthrift trust may, upon the happening of the contingency and the determination of the particular estate, pay or transfer to such assignee as trustee; (5) what is the status of the legacy to Francis M. Learned, given to him out of that portion of the property which would have gone to the issue of the daughter of the testator who died first, had she left such issue surviving; and (6) who are the remaindermen entitled to take upon the death

of the survivor of the daughters of the testator if such survivor die without issue?

John H. Collamore left as his only heirs at law and next of kin Maria L. H. Learned, Virginia D. Collamore and Gilman F. Collamore. Maria L. H. Learned died, leaving no issue, on June 3, 1928. Gilman F. Collamore died April 26, 1924. Virginia D. Collamore was alive at the filing of the petition for instructions, but died on March 20, 1930, without ever having had issue. Francis M. Learned died on March 14, 1921. Melvin M. Johnson and Daniel C. Linscott were appointed trustees under said will in succession to said Learned on April 7, 1921. Virgil C. Brink was appointed a trustee under said will on January 20, 1927. The present trustees Virgil C. Brink and Melvin M. Johnson have prepared their first account as trustees under said will for the period beginning January 22, 1927, and ending March 31, 1928. At all times material the only property of any substance owned by the trustees under said will consisted of real estate on Columbus Avenue, Boston, Massachusetts, which was disposed of by Francis M. Learned, while trustee, and he acquired in lieu thereof the equity in certain real estate, in Boston, known as the Jaynes Building. The trustees owned other small parcels of real estate and small amounts of personal property, which were, however, insufficient to pay cash charges against principal as these charges arose. Therefore, from time to time, they advanced from income account to principal account various sums of money. The total amount thus advanced from March 14, 1921, to January 21, 1927, was $6,863.18. Of these advancements $6,615.78 were made by Francis M. Learned while he was trustee. The balance $247.40 was made by Johnson and Linscott while they were trustees. The advancements made by Learned have in every instance appeared in accounts which were assented to by the life tenants.

The only ways in which the trustees could have provided moneys for the use of principal to pay income the amount due it would have been to sell the real estate, or to borrow money secured by a further mortgage on the real estate.

The trustees at all times have believed that the property could not be sold at an adequate price, and also have deemed it unwise to borrow upon a mortgage because the interest they would have to pay upon such borrowed money would be a charge against income and, in all probability, would be as great or greater than the rate of income received by the beneficiaries. It is assumed the advancements were necessary and that the method of financing the principal was prudent and was for the best interest of the life tenants and remaindermen.

All the advancements, with the exception of $247.40, were made during the incumbency of Francis M. Learned as sole trustee, and were made during the period beginning May 1, 1920, and ending March 14, 1921. This period was covered by the eighth and final account of Francis M. Learned, which was assented to by the life tenants and allowed by the Probate Court on August 4, 1921. The successors of Francis M. Learned carried the advancements in all subsequent accounts without an addition of interest, and these accounts were assented to by the life tenants and allowed as final accounts by the Probate Court on March 13, 1928. The trustees are now in process of making a sale of the real estate, or securing a mortgage thereon to repay the sum advanced from income to principal and to pay other sums which are or may have been due on the death of said Maria L. H. Learned.

On the above facts there is nothing to indicate that the absence of an item of interest in the accounting arose through mistake or error; it inferentially appears that the omission was intended and with the assent of the life tenants and remaindermen. It follows that the first request for instructions is answered, No.    G. L. c. 206, § 19. *Barrett* v. *Briry,* 256 Mass. 45. *Rowell* v. *Milliken,* 266 Mass. 448.

The will provided as follows: "I give to Francis M. Learned the husband of said Maria L. H. Learned, the sum of fifteen thousand dollars, less such sums as I may give him during my life, payable one third in three months, one third in six months and one third in nine months after my decease. I give said Francis an additional sum of

fifteen thousand dollars upon the decease of either of said Maria L. H. Learned or Virginia D. Collamore whichever may first occur, the same to be taken from the principal of the trust fund which I have established for said Maria and Virginia." Francis M. Learned survived the testator, who died November 3, 1896, and died March 14, 1921, before the death of either Maria L. H. Learned or Virginia D. Collamore. It is contended by some of the defendants that the gift of $15,000, payable to Learned upon the death of either daughter of the testator, was contingent upon the event of the death of either of the daughters during the lifetime of Learned, and that the legacy lapsed and fell into the residue of the estate if the death of Learned occurred, as it did, before the death of either daughter. This contention is based upon the proposition that the general rule favoring vested rather than contingent gifts always yields where a contrary intention of the testator is to be gathered from a fair construction of the entire will. *Knowlton* v. *Sanderson*, 141 Mass. 323, 326. *Hale* v. *Hobson*, 167 Mass. 397, 400. The inference that the testator intended to create a contingent interest rather than a vested legacy is drawn from the fact that the first legacy was clearly meant to vest at the time of the death of the testator, while the second legacy is given upon the decease of either Maria L. H. Learned or Virginia D. Collamore, "the same to be taken from the principal of the trust fund which I have established for said Maria and Virginia." Certain defendants argue that, from the form of the two gifts, the testator intended the first legacy should be a present gift and the second legacy a gift contingent upon the happening of an uncertainty, to wit, the death of either Maria or Virginia during the lifetime of Francis M. Learned; they rely upon *Crapo* v. *Price*, 190 Mass. 317, 321, *White* v. *Underwood*, 215 Mass. 299, *Boston Safe Deposit & Trust Co.* v. *Blanchard*, 196 Mass. 35, *Hulburt* v. *Emerson*, 16 Mass. 241.

The testator provided for the establishment of the said trust for Maria and Virginia, bequeathing his residuary estate to Francis M. Learned and Horace W. Stickney as

trustees, to pay the income to his daughters in equal shares during their natural lives and upon the decease of either of them to pay from the trust estate "the sums hereinbefore given to the Board of Trustees of 'Masonic Education and Charity Trust' and Francis M. Learned." The testator then provided, upon the death of either Maria or Virginia, for a division of what remained of the fund into two equal portions, the income of one portion for the survivor of them and of the other portion for the benefit of the issue of such deceased daughter. The clause further provides for a gift over of a remainder to Francis M. Learned upon the contingency of his survival, as will presently be pointed out. The intention of the testator gathered from the will as a whole strongly indicates that this legacy should be vested. *Peck* v. *Carlton,* 154 Mass. 231. *Boston Safe Deposit & Trust Co.* v. *Stratton,* 259 Mass. 465, 477, and cases there cited. The language of the entire will imports a present gift, though the enjoyment of it is postponed until the death of either of the daughters. The trustees are instructed that, in answer to question two, the $15,000 should be paid to the executors of the will of said Francis M. Learned.

On March 7, 1925, the trustees leased a part of the property owned by them as trustees on Washington Street, Boston, Massachusetts, for a term of five years beginning July 1, 1925, and expiring on July 31, 1930. The lessee assigned this lease on March 13, 1925, to Cotton Research Company, Inc., a Massachusetts corporation. The rent reserved was $5,000 "a year payable $416.67 monthly, on the first day of each month for that month." On February 1, 1928, the assignee desired to surrender said lease and procured for the trustees a new tenant under a new lease to take over the premises for the period beginning February 1, 1928, and ending July 31, 1930. The rent reserved in this last lease was $2,400, payable monthly at the rate of $200 per month in advance. On February 1, 1928, the Cotton Research Company, Inc. paid to the trustees the sum of $5,969.16, representing a sum which, if placed at simple interest at four per cent, would, when added to the rent payable under the new lease, give the trustees exactly what

they were to receive under the old lease for the unexpired portion of its term. In consideration thereof the trustees released the Cotton Research Company, Inc. from liability under the old lease. The question which is presented under this third request for instructions is, Was this prepayment of income when received on February 1, 1928, payable to the persons then entitled to receive the income of the trust fund, or was it to be periodically distributed from time to time to persons who at such times were entitled to receive the income then payable? In order that justice be done between the parties, the acceptance of the consideration for the release of said Cotton Research Company, Inc. from liability under the old lease required that the trustees should distribute the money received between the tenant for life and the remaindermen periodically, and that it should not be given in the nature of a bonus dividend to the then life tenant. *In re Rodes*, [1909] 1 Ch. 815, in which the case of *In re Hunloke*, [1902] 1 Ch. 941, is distinguished. See *In re Penrhyn's Settlement*, [1922] 1 Ch. 500. It follows that in respect to the third question the trustees are instructed that the sum received in consideration of the surrender of the lease is income to be distributed as though it was rent accrued and to accrue under the original lease, and as though there had been no surrender, to the persons entitled thereto during the twenty-nine months which, at the time of the surrender of the original lease, remained unexpired of its term.

The will provides: "The provisions of this will are expressly subject to the provision that no part of any principal or income by its terms payable to or to be transferred or conveyed to any person, organization or corporation shall before payment, transfer or conveyance of the same to such person, organization, or corporation be assignable, attachable or trusteeable, or in any way or manner liable for or liable to be taken for any debt, liability or contract of such person, organization or corporation or be applied in any way or manner toward the payment or satisfaction of the same." Under other provisions of the will the trustees are called upon to distribute a portion of the trust fund to cer-

tain Masonic bodies, all of which are voluntary associations, with the exception of the Grand Lodge of Massachusetts, the Masonic Education and Charity Trust, and the Mount Lebanon Lodge of Laconia, New Hampshire, which are corporations. Each of said associations and corporations has executed, and its treasurer has acknowledged with its vote attested by its secretary, an agreement and declaration of trust establishing the Collamore Masonic Trust. The limitation upon the legatees' power of disposition and full legal enjoyment of the legacies does not touch or inhibit the power of the legatees to create the Collamore Masonic Trust, which has for its object the creation of a convenient conduit of title to the real estate. *Nickerson* v. *Van Horn,* 181 Mass. 562. *Boston Safe Deposit & Trust Co.* v. *Luke,* 220 Mass. 484. As respects this limitation the trustees of the spendthrift trust are instructed, in answer to question four, that, on the happening of the contingency and the determination of the particular estate, they may transfer to the Collamore Masonic Trust or to Melvin M. Johnson as trustee of the Collamore Masonic Trust the share which each Masonic body may be entitled to receive at that time.

The will provides: ". . . and if one deceased leaves the issue of her body then to hold and apply the other portion for the benefit of such issue . . . In case either of my said daughters Maria and Virginia shall die leaving no issue of her body then the portion of the trust estate which according to the provisions of this will would be held for and go to such issue if any, with all accumulations . . . shall be made over and paid in equal shares to the said Francis M. Learned, if living, and to the several Masonic lodges, commanderies, chapters and councils hereinbefore named and including said Grand Lodge of Massachusetts; the share of each of said legatees, excepting said Francis, is to be paid to its Treasurer for the time being and shall be used and applied as a part of the charity fund which said lodges, chapters, commanderies, councils and Grand Lodge shall have or may establish." Francis M. Learned survived the testator but died prior to the death of Maria L. H. Learned and of Virginia D. Collamore, who died, respectively, on

June 3, 1928, and March 20, 1930, without ever having had issue.

Upon a consideration of the entire will it is reasonably plain that it was the intent of the testator that Francis M. Learned was to take after the payment of various legacies an equal share with various Masonic bodies, *supra*, in one half of the trust fund upon the death of either Maria L. H. Learned or Virginia D. Collamore if he, Francis M. Learned, was living at the time for such distribution. The case falls within *Putnam* v. *Storey*, 132 Mass. 205, wherein at page 210 it is said: "where a remainder is so limited as to take effect in possession, if ever, immediately upon the determination of a particular estate, which estate is to determine by an event which must unavoidably happen by the efflux of time, the remainder vests in interest as soon as the remainderman is *in esse* and ascertained; provided nothing but his own death before the determination of the particular estate will prevent such remainder from vesting in possession." Applying the rule thus stated, the interest did not vest in Learned because the event which determined that interest was not "an event which must unavoidably happen by the efflux of time"; the words "if living" import here a contingency equal to the words "then living." It follows that the next of kin of Francis M. Learned are not entitled to this share, *Denny* v. *Kettell*, 135 Mass. 138, which would have passed to Learned if he had been living at the death of either daughter. It is equally plain that the several Masonic bodies, *supra*, are not entitled to the share which Francis M. Learned would have taken if living. The gift to Learned and to the various Masonic bodies is a gift to the named recipients individually, and does not create a joint tenancy. The will contains no provision for the contingency which has happened, namely, that Francis M. Learned should die before either daughter of the testator. It follows that the gift which would have passed to Francis M. Learned if living at the death of either daughter must be distributed to the next of kin of John H. Collamore as intestate property. *Horton* v. *Earle*, 162 Mass. 448. *Lyman* v. *Coolidge*, 176 Mass. 7.

*Boston Safe Deposit & Trust Co.* v. *Reed*, 229 Mass. 267, 270. *Loring* v. *Dexter*, 256 Mass. 273. The trustees are instructed, in answer to question five, to pay one half of the residuary estate to be distributed as upon the death of Maria L. H. Learned to the next of kin of John H. Collamore.

As to the remainder of the estate which is released from the trust by reason of the death of Virginia D. Collamore, the testator made no direct disposition, and we can find no clear intimation in the will that it was the unexpressed intent of the testator that the fund which should remain after the distribution of the portion set free from the trust with the death of the sister who first died should go to Francis M. Learned and to the various Masonic bodies, *supra,* as an addition to the legacies which these legatees were to receive at the death of the sister who should first die. Nor do we think that the word "either" in the provision for the distribution of the first portion of the trust fund can consistently be construed to mean "any" so that upon the death of any or both of the daughters, leaving no issue, the share of that daughter or of both daughters, or of the surviving daughter, is to be disposed of as a gift to Francis M. Learned or to the Masonic bodies, *supra.* It follows that there is no gift over by implication of this portion of the trust fund. *Bailey* v. *Bailey,* 236 Mass. 244, 247. *Frye* v. *Saunders,* 248 Mass. 285. The trustees are instructed, in answer to question six, that the next of kin of the testator John H. Collamore are entitled as remaindermen to receive under the will notices in the filing and seeking allowances of their accounts. Costs as between solicitor and client may be paid out of the fund in the discretion of the single justice.

*Decree accordingly.*