In the Matter of the Estate of PATRICK J. O'KEEFFE, Deceased.

Surrogate's Court, New York County, September 26, 1939.

*John J. O'Grady, Jr.,* for the trustee.

*William A. Marden,* for the respondents.

*Beam & Cullen,* for Anna Bader, as assignee of a distributee.

*Francis L. Valente,* special guardian.

FOLEY, S. This is an application by the trustee for instructions. The testator died on June 12, 1934. By his will he created a trust of his residuary estate to continue during the lives of his son and daughter. From the income of the trust he directs the payment of an annuity of $12,000 a year to his widow, and should the income be insufficient the will provides for invasion of principal to make up any deficit. The balance of the income is directed to be divided between the son and the daughter. An agreement made after death between the heirs modified the terms of the will but is of no

importance here. After the death of the widow, the entire income from the trust is to be paid to the son and daughter. The remainder is given to the issue of the son and the daughter on the termination of the trust.

At the date of his death the testator owned a one-half interest in the fee of property located at Thirty-seventh street and Sixth avenue. This property had been leased by the testator and his co-owner for the term beginning August 1, 1929, and ending August 1, 1950. This lease was considered very favorable by the testator and by the trustee, and called for a net rental beginning with $25,000 a year and increasing to $35,000 a year for the last ten years of the term. In September, 1938, the tenant was in arrears in the payment of his rent. An action was thereafter instituted by the trustee and the co-owner of the property against the tenant. An offer of compromise was made under which the tenant agreed to pay $16,142.79 in settlement of arrears due and the further sum of $25,000 for the surrender and cancellation of the lease and the releasing of the obligations of the tenant thereunder. The proposed settlement was approved by a decree of this court. The trustee now asks instructions as to the disposition of the estate's net half share of the sums paid for the surrender and cancellation of the lease. It is contended on behalf of the income beneficiaries that the entire sum is income and should be immediately distributed as such. The special guardian representing the remainder interest contends the amount paid for the surrender of the lease is principal and that all or at least part thereof should be allocated to the principal account. He urges that the favorable terms of the lease had an intrinsic value which increased the market value of the property and that the termination and surrender of the lease has impaired the value of the principal of the trust. There is no merit in these contentions. Under the terms of the will and the clear intention of the testator, principal had no interest in the lease during the continuation of the trust. Furthermore, the provisions of a lease, however favorable, have no greater value than the ability of the tenant to perform. At most, principal has a prospective interest in the terms of the lease in that the trust may terminate prior to the expiration of the lease, and the remainder interest will then enjoy its favorable terms.

There appears to be no precedent in this State as to the disposition to be made by a trustee of money received for the surrender and cancellation of a long-term lease. Counsel representing the income interest has cited numerous English cases, and cases of other States on this point. Although some of these authorities support his contention that the entire amount paid for the surrender

should be immediately distributed as income, each of the cases is distinguishable. In the case of *Matter of Archambault* (232 Penn. St. 347) the amount paid for the surrender of the lease might be construed as a bonus because the new lease was even more favorable than the lease which was canceled, and the remaindermen were in no way prejudiced. The case of *Lang* v. *Mississippi Valley Trust Co.* (—— Miss. ——; 124 S. W. [2d] 1198) contains a collection of the authorities on this point, and seems to hold squarely that the money paid to a trustee for the surrender of a long-term lease is immediately payable to the life tenant as income. I prefer to base my conclusion, however, on the English and Massachusetts authorities, and on the settled rule in this State in trust administration that the rights of all parties having an interest in a trust should be preserved as far as is possible. This principle is clearly enunciated in section 204 of the Surrogate's Court Act. The Court of Appeals has recently approved and enforced this rule that the rights of the life tenant and remaindermen must both be preserved. (*Matter of Otis*, 276 N. Y. 101; *Matter of Chapal*, 269 id. 464; *Matter of Ely*, 249 App. Div. 8; affd., 274 N. Y. 501.)

The English cases appear to treat the disposition of money received for the surrender of a lease in two ways. Where a legal life tenant enters into a lease and receives money for a surrender, he may keep the money as a casual profit. (*Matter of Penryhn's Settlement*, [1922] 1 Ch. 500; *Matter of Hunloke's Settled Estates*, [1902] Id. 941; *Matter of Wix*, [1916] Id. 279.) On the other hand, if an equitable estate is created in the form of a trust and money is paid to the trustee for the surrender of the lease, it has been held that the fund should be separated into installments representing the payments due under the lease, and that the money should be paid to the person entitled thereto as each installment becomes due. (*Matter of Rodes*, [1909] 1 Ch. 815.) This latter case appears to have been followed in Massachusetts (*Johnson* v. *Brink*, 271 Mass. 521; 171 N. E. 717). The rule adopted in England and Massachusetts in so far as trust estates are concerned seems to be most equitable. It preserves the right of the life tenant and the prospective right of the remaindermen. The money paid for the surrender and cancellation of this lease was paid by the tenant in lieu of his obligation to pay the rent called for until the expiration of the lease and his obligation to pay the taxes on the property. The lump sum payment was in discharge of a continuing obligation. It is possible that the trust might terminate before the expiration date of the original lease. The persons whose lives measure the trust may die before that date. The widow may likewise die before that date. If the entire amount paid were now

distributed as income, the prospective right of the remaindermen to receive rent under the lease or payment in lieu thereof would be cut off. Such procedure would not be in line with the principles of trust administration established as the law of this State. I accordingly hold that the fund paid for the surrender of the lease should be divided into annual installments to cover the period until the expiration date of the lease. Roughly the lease had twelve years to run when it was canceled. As each of these installments becomes due, it should be paid as income during the continuation of the trust. Each installment will be subject to the payment of proper income charges and subject to the plan of the will. On the termination of the trust, the balance, if any, should be distributed to the remaindermen after an appropriate apportionment in accordance with section 204 of the Surrogate's Court Act.

The taxes levied on premises 335 West Eighty-fifth street, occupied by the widow pursuant to the terms of the will, must be paid, in the first instance, from the surplus income of the estate, if any. There is no indication in the will of an intention to depart from the general rule that taxes and carrying charges are primarily a charge upon income. (*Matter of Albertson*, 113 N. Y. 434; *Matter of Ely*, 249 App. Div. 8; affd., 274 N. Y. 501.) If there is not sufficient surplus income to pay the taxes on this parcel of realty, the principal may be resorted to for that purpose.

The trustee will be authorized to rehabilitate certain other parcels of realty in order to comply with the Multiple Dwelling Law. The question as to the allocation, between principal and income, of the money expended to make the improvements will be reserved for determination in the accounting proceeding which will be instituted in the next few months. Similarly the other question raised in this proceeding concerning the payment of commissions will be reserved for determination in the accounting. (Surr. Ct. Act, § 285.)

Submit decree on notice in accordance with this decision.