ELEANOR SALTONSTALL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 112605.    Promulgated December 3, 1943.

*Edward C. Thayer, Esq.*, for the petitioner.
*Charles P. Reilly, Esq.*, for the respondent.

### OPINION.

MURDOCK, *Judge*: The Commissioner determined deficiencies in income tax of this petitioner for the calendar years 1937 and 1938 in the amounts of $48,353.76 and $11,291.95, respectively. The parties have

filed a stipulation settling all issues save two and stating the facts as to those two issues.

The petitioner reported as income for 1937 the amount distributed to her by a trust which had been created by her father. The Commissioner added, to the amount reported, additional income of the trust. He did that upon the theory that the entire net amount recovered by the trust in 1937 from a bankrupt lessee of a part of the trust property was distributable income of the trust. The petitioner contends that the amount added by the Commissioner was not income of the trust distributable to her in 1937 and, therefore, forms no part of her taxable income for that year.

The petitioner is an individual who filed her returns for the periods here involved with the collector of internal revenue for the district of Massachusetts. Her father, Peter C. Brooks, created a trust in 1917. The deed provided that a part of the income of the trust should be paid to Lawrence Brooks, a brother of the petitioner, and the balance should be paid to the petitioner. Lawrence Brooks died on November 13, 1937. The trust property was to be divided, after the death of the petitioner, into equal shares, one share for each of the petitioner's children. If those entitled were at that time 25 years of age, their share was to be paid to them and the trust terminated as to that child. Otherwise, the income was to be paid to the beneficiary until that beneficiary became 25 years of age, at which time a corresponding part of the corpus was to be paid over to him.

The trust corpus included two parcels of real estate situated in Chicago. These two properties had been leased to the United Cigar Stores. The lease on the Yukon Building was for the period May 1, 1925, to April 30, 1945. The lease on the Flatiron Building was for the period September 1, 1913, to August 31, 1938. The lessee had in turn sublet portions of each building. The lessee was required to pay certain specified annual rentals, as well as all taxes on the properties.

The lessee was adjudicated a bankrupt on August 29, 1932. The trustees in bankruptcy on October 19, 1932, assigned to the Brooks trust all of the interest of the bankrupt in the leases and subleases, including the right to the rents accrued and to accrue from September 1, 1932, but without prejudice to the right of the Brooks trust to prove against the bankrupt any provable claims to which the bankruptcy court might adjudge the landlord entitled.

There was a reorganization of the bankrupt under section 77 (b). The Brooks trust made claim for damages for breach of the leases based upon the total rentals payable to the terminations thereof, plus estimated taxes and less net anticipated rent from rerentals. The claim so computed amounted to $576,610.22. The maximum allowable

claim for such damages is limited under the Bankruptcy Act to the amount of gross future rents and taxes payable as rent for a period of three years from the date of reentry by the landlord. The claim was thus limited to $246,768.33. That claim was classified as entitled to payment in securities at two-thirds of the maximum allowable amount of the claim, or at $164,512.22. The net amount recovered, after allowing for expenses and a change in market value of the securities, was $149,416.15. This entire amount was received by the Brooks trust during 1937.

A son of the petitioner, who is one of the trustees of the Brooks trust, sought the advice of Edward C. Thayer, Esq., as to how the trust should treat the net recovery from the bankrupt lessee and was advised that the entire recovery was income of the trust for 1937, but that it was not all distributable in that year to the income beneficiary. Thayer stated that the recovery was a lump sum in settlement of future rents, and would have to be held and distributed at intervals during the remaining terms of the leases to those who would have been entitled to income from the leases during those periods had there been no surrender. He cited *Johnson* v. *Brink*, 271 Mass. 521.

The trustees of the Brooks trust treated $91,981.27 of the total recovery as allocable to the period from the date of reentry to December 31, 1937, and on their books and on their income tax return for 1937 they treated the balance of $57,434.88 of the net recovery as income of the trust which was not distributable for 1937. The mathematical correctness of the above apportionment is not in dispute.

The petitioner did not report the $57,434.88 as a part of her income for 1937. The Commissioner, in determining the deficiency, held that the net recovery was income of the trust distributable in 1937, and since the entire net income of the trust, with the exception of capital gains and with the exception of the amount distributable to Lawrence, was distributable to the petitioner, he included the $57,434.88 in her income. The propriety of his action in including this amount is the only issue presented with respect to the year 1937.

The petitioner concedes that the entire recovery was income of the trust for 1937. The deed of trust provides that the income of the trust shall be distributed to the petitioner. The Commissioner has determined that all of the recovery was distributable in 1937 and that the $57,434.88 is included in the share distributable and taxable to the petitioner in 1937. The petitioner recognizes that it is taxable to her if it was distributable in that year. She contends that the law of Massachusetts governs the question of whether or not the $57,434.88, or any part, was distributable to her in 1937, the case of *Johnson* v. *Brink, supra*, controls, and it fully supports the trustees in withholding the $57,434.88 from her in that year.

The deed of trust does not expressly provide for the situation which has arisen or give to the trustees any express power to withhold income, such as this, from the petitioner. The same was true of the trust involved in the *Johnson* case. The lessee there had obtained a new lessee for the entire term at a reduced rent and had paid the discounted difference in cash. The court there said:

* * * The question which is presented under this third request for instruction is, Was this prepayment of income when received on February 1, 1928, payable to the persons then entitled to receive the income of the trust fund, or was it to be periodically distributed from time to time to persons who at such times were entitled to receive the income then payable? In order that justice be done between the parties, the acceptance of the consideration for the release of said Cotton Research Company, Inc., from liability under the old lease required that the trustees should distribute the money received between the tenant for life and the remaindermen periodically, and that it should not be given in the nature of a bonus dividend to the then life tenant. * * * the trustees are instructed that the sum received in consideration of the surrender of the lease is income to be distributed as though it was rent accrued and to accrue under the original lease, and as though there had been no surrender, to the persons entitled thereto during the twenty-nine months which, at the time of the surrender of the original lease, remained unexpired of its term.

We do not understand the case to lay down an absolute rule for the state that every recovery of future rents must be prorated uniformly over the unexpired term of the lease following default or substitution of lessees. The decision was made "in order that justice be done between the parties." Here, putting ourselves in the place of a Massachusetts court, we would have to know all of the pertinent facts in the case in order to do justice between the parties. Different facts might lead to different results. All of the pertinent facts known up to the date of decision should be disclosed. The recovery here, unlike that in the *Johnson* case, was not a full recovery but was considerably less than would have been received under the leases. We have not been told anything about rerentals and new leases following the default and up to the close of 1937. It is not difficult to imagine the existence of circumstances under which a court would favor a claim of this petitioner for the entire recovery as opposed to claims of those entitled to benefit from the trust after 1937. If it appeared, for example, that the diminution in trust income up to 1937 had been great, whereas there was then a strong probability that later beneficiaries would fare adequately under an existing new lease, a just allocation might be to distribute the entire award to this petitioner. How then can we say that a just allocation would be inconsistent with the determination of the Commissioner? We leave the parties as we found them on this point.

The sole issue for 1938 relates to deductions for depreciation on buildings which the petitioner inherited from her brother. The

brother died in 1937 leaving to the petitioner a farm in Massachusetts. where he had been living. It is agreed that $795 would be a proper deduction for depreciation on the farm buildings if any is allowable. The petitioner never lived on the farm and had no intention of living there. She offered it for sale in 1938 and obtained what rent she could for the use of parts of the farm until sales were made. Some rent and income was obtained from the property.

Section 23 (l) of the Revenue Act of 1938 has been amended by section 121 (c) of the Revenue Act of 1942 to allow a depreciation deduction for property held for the production of income as well as for property used in business. The petitioner is entitled to the deduction claimed. Cf. *Robert W. Williams, Executor*, 1 B. T. A. 1101.

*Decision will be entered under Rule 50.*