## SALTONSTALL v. COMMISSIONER OF INTERNAL REVENUE.

### No. 3980.

*Circuit Court of Appeals, First Circuit.*

March 15, 1945.

Edward C. Thayer, of Boston, Mass., for petitioner for review.

L. W. Post, Sp. Asst. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Charles E. Lowery, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for Commissioner.

Before MAGRUDER, MAHONEY and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is a petition for review of a decision of the Tax Court of the United States in so far as it determined a deficiency in the petitioner's income tax liability for the year 1937. The facts are not in dispute and were stipulated.

The taxpayer, an individual residing in Massachusetts, is the sole remaining life beneficiary of a trust created in 1917, by her father, who in his lifetime also resided in Massachusetts. By the terms of this trust a certain amount of the net income thereof was to be set aside annually for the benefit of the taxpayer's brother (he died on November 13, 1937) and the balance of the net income was to be paid over annually to the taxpayer as long as she lived. Upon her death, she having survived her brother who was the only other life beneficiary, the corpus of the trust is to be divided in equal shares and distributed to the taxpayer's children.

Included in the trust property were two buildings located in Chicago known as the "Yukon building" and the "Flatiron building". Both were leased to the United Cigar Stores Company of America; the former from May 1, 1925, to April 30, 1945, the latter from September 1, 1913, to August 31, 1938. Under the terms of these leases the lessee was obligated to pay specified annual rentals and all taxes on the properties. The lessee had sublet portions of each building.

On August 29, 1932, the United Cigar Stores Company of America, the lessee, was adjudicated a bankrupt and on October 19, following, its trustee in bankruptcy assigned its entire interest in the leases and subleases, including its right to rentals accrued and to accrue from and after September 1 of that year, to the trustees. But this assignment was without prejudice to the right of the trustees to prove against the bankrupt any claims to which they might be entitled as landlord. There was a reorganization of the bankrupt under § 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, and eventually under this section as amended the trustees' claim was allowed, and in 1937 they received in cash and securities the net amount of $149,416.15.

The trustees acting on the advice of counsel treated this entire recovery as income for the year in which they received

it, but they did not treat all of it as income distributable in that year. On their books and on their income tax return they treated $91,981.27 of their net recovery as attributable to the period from October 19, 1932, the date of their re-entry, to December 31, 1937, and as distributable in 1937, and they treated the balance of $57,434.88 as attributable to the time the leases would have run had there been no surrender and as income distributable periodically to whomever might prove to be the beneficiaries of the income of the trust during that time. It is conceded that the trustees' apportionment is mathematically correct. Consequently the trustees paid income taxes on the $57,434.88 in 1937, and the beneficiary, the taxpayer herein, not receiving that sum, did not report it or pay an income tax upon it for that year.

The Commissioner took the position on auditing the taxpayer's return that the trustees' entire net recovery of $149,416.15 was income of the trust distributable in 1937 and accordingly assessed a deficiency against the taxpayer. On appeal to the Tax Court his position was sustained. 2 T.C. 1099. The question for us then is whether the entire net amount recovered by the trustee-lessors upon their claim against the bankrupt lessee for breach of leases running into the future constitutes income which is to be distributed currently by the trustees to the taxpayer as the life beneficiary of the trust at the time of recovery and hence is taxable in its entirety to her under § 162(b) of the Revenue Act of 1936.[1]

The taxpayer and the Commissioner are in agreement upon certain points. They agree that the entire recovery was income of the trust in 1937, and they also agree that under the doctrine of Freuler v. Helvering, 291 U.S. 35, 43–45, 54 S.Ct. 308, 78 L.Ed. 634, and Blair v. Commissioner of Internal Revenue, 300 U.S. 5, 9, 10, 57 S.Ct. 330, 81 L.Ed. 465, the question whether all or any part of it was distributable to the life beneficiary in that year depends upon the law of Massachusetts. Furthermore they concede that the leading if not the only Massachusetts case in point is Johnson v. Brink, 271 Mass. 521, 171 N.E. 717, 719, decided by the Supreme Judicial Court of that Commonwealth in 1930. They disagree as to the rule which this case establishes for the factual situation before us on this petition for review.

The facts and decision in the Brink case (a bill in equity brought by trustees for instructions) so far as material are brief enough to quote in full. They are as follows:

"On March 7, 1925, the trustees leased a part of the property owned by them as trustees on Washington street, Boston, Massachusetts, for a term of five years beginning July 1, 1925, and expiring on July 31, 1930. The lessee assigned this lease on March 13, 1925, to Cotton Research Company, Inc., a Massachusetts corporation. The rent reserved was $5,000 'a year payable $416.67 monthly, on the first day of each month for that month.' On February 1, 1928, the assignee desired to surrender said lease and procured for the trustees a new tenant under a new lease to take over the premises for the period beginning February 1, 1928, and ending July 31, 1930. The rent reserved in this last lease was $2,400, payable monthly at the rate of $200 per month in advance. On February 1, 1928, the Cotton Research Company, Inc., paid to the trustees the sum of $5,969.16, representing a sum which, if placed at simple interest at four per cent. would, when added to the rent payable under the new lease, give the trustees exactly what they were to receive under the old lease for the unexpired portion of its term. In consideration thereof the trustees released the Cotton Research Company, Inc., from liability under the old lease. The question which is presented under this third request for instructions is, Was this prepayment of income when received on February 1, 1928, payable to the persons then entitled to receive the

---

[1] Revenue Act of 1936, c. 690, 49 Stat. 1648, 26 U.S.C.A. Int.Rev.Acts, page 893:

"Sec. 162. Net Income

"The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\* \* \* \* \* \*

"(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, \* \* \* but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. \* \* \* \*"

income of the trust fund, or was it to be periodically distributed from time to time to persons who at such times were entitled to receive the income then payable? In order · that justice be done between the parties, the acceptance of the consideration for the release of said Cotton Research Company, Inc., from liability under the old lease required that the trustees should distribute the money received between the tenant for life and the remaindermen periodically, and that it should not be given in the nature of a bonus dividend to the then life tenant. In re Rodes [1909] 1 Ch. 815, in which the case of In re Hunloke [1902] 1 Ch. 941, is distinguished. See In re Penrhyn's Settlement [1922] 1 Ch. 500. It follows that in respect to the third question the trustees are instructed that the sum received in consideration of the surrender of the lease is income to be distributed as though it was rent accrued and to accrue under the original lease, and as though there had been no surrender, to the persons entitled thereto during the twenty-nine months which, at the time of the surrender of the original lease, remained unexpired of its term."

The taxpayer construes the above language to lay down a rule· of general application to the effect that whatever amount trustees may recover as damages for breach of a lease should always be apportioned over the remainder of the term of the lease and paid to whomever may be entitled to receive the income of the trust during that time, and she cites the opinion of Surrogate Foley in Matter of O'Keefe, 172 Misc. 486, 15 N.Y.S.2d 201, affirmed without opinion 261 App.Div. 940, 26 N.Y.S.2d 493, in support of her position. The Commissioner, on the other hand, and the Tax Court agreed with him, says that the Brink case establishes a rigid rule of apportionment only when the damages recovered give the trustees exactly what they would have received had the lease run its term, and that when as here the amount recovered was far less than that,[2] it requires allocation between present and prospective beneficiaries as the equities in particular cases may dictate.

■ We agree with the Commissioner and the Tax Court. Clearly when trustees recover full damages apportionment is equitable. But when only partial damages are recovered it may not be. As the Tax Court said: "If it appeared, for example, that the diminution in trust income up to 1937 had been great, whereas there was then a strong probability that late beneficiaries would fare adequately under an existing new lease, a just allocation might be to distribute the entire award to this petitioner." See notes in 53 Harvard Law Review 891; 46 Yale Law J. 872; 49 Yale Law J. 969. And we do not think that the Supreme Judicial Court of Massachusetts in the Brink case intended to preclude the possibility of such an allocation. We think all it did in that case was to decide that the allocation of recoveries such as this depends upon the equities of each case, but that when the recovery equals the loss the equities require apportionment over the unexpired remainder of the term of the lease.

But we do not agree with the Tax Court that, no evidence having been introduced with respect to vacancies in, or the rentals received from the buildings since 1932, this construction of the Brink case leaves the taxpayer no alternative now but to pay the deficiency assessed against her.

■ The parties submitted their controversy to the Tax Court on the Commissioner's determination of deficiency, the pleadings, exhibits, statements of counsel, briefs and a stipulation of facts which so far as appears counsel on both sides and the court thought adequate for a decision under the rule of Johnson v. Brink. Now it appears that the stipulation is inadequate because it does not show the income of the trustees from the buildings from the date of re-entry to December 31, 1937. Clearly such figures are in the possession of the trustees and its seems to us that justice requires that the taxpayer be given an opportunity to present them to the Tax Court.

As a general proposition substantive rights ought always to be determined on all the relevant facts as nearly as those facts can be ascertained. This proposition, how-

---

[2] The trustees' gross claim was for $576,610.22 damages. But since the maximum allowable claim for damages of this sort is limited by the Bankruptcy Act to a figure equal to the gross future rents and future taxes payable as rent for a period of three years from the date of re-entry by the landlord, this claim was reduced to $246,768.33. Then under the plan of reorganization of the bankrupt they received in full settlement of their claims cash and securities of the reorganized corporation having an aggregate value of $161,530.98, and their necessary expenses for recovery amounted to $12,114.83. So they were left with a net recovery of only $149,416.15.

ever, is limited by considerations of expediency. Sometimes in order to expedite the business of the court by preventing piecemeal trials, and sometimes in fairness to an opponent it is necessary to prevent the reopening of a case for the production of further relevant evidence. But we see no controlling considerations of expediency here. Admittedly the Tax Court has a full docket, but the facts necessary to decide this case on the merits can no doubt be stipulated and a decision based upon them readily arrived at. And we see no unfairness to the Commissioner in giving the taxpayer an opportunity to present her figures. Consequently in the exercise of the power to remand for a rehearing as justice requires conferred upon us by Congress in § 1141(c) of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 1141(c) and on the authority of Underwood v. Commissioner of Internal Revenue, 4 Cir., 56 F.2d 67, 73; Virginia-Lincoln Furniture Corporation v. Commissioner of Internal Revenue, 4 Cir., 56 F.2d 1028, 1033; Manchester Board & Paper Co., Inc. v. Commissioner of Internal Revenue, 4 Cir., 74 F.2d 838, 840; Knight Newspapers, Inc. v. Commissioner of Internal Revenue, 6 Cir., 143 F.2d 1007, 1012.

The decision of the Tax Court is reversed and the case is remanded to that court for rehearing and further proceedings consistent with this opinion.