**HANNA IRON ORE CO.**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

**No. 11115.**

United States Court of Appeals Third Circuit.

Argued Nov. 5, 1953.

Filed Dec. 9, 1953.

John E. Laughlin, Jr., Pittsburg, Pa., for appellant.

Cecelia H. Goetz, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Melva M. Graney, Sp. Assts. to Atty. Gen., on the brief), for appellee.

Before KALODNER, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

Petitioner asked the Tax Court to hold that expenses incurred in stripping the overburden from an open-pit iron ore mine, before any ore was removed from the mine, were deferred mining expenses, recoverable by deduction from the in-

come produced by the sale of the ore thus uncovered and removed, rather than development expenses, chargeable to capital and recoverable through depletion. The Tax Court [1] declined to do so, and the case comes here. Petitioner's income tax liability for the taxable year 1944 is in question.

We take the necessary facts from the parties' stipulation which was adopted by the Tax Court. Petitioner had an iron ore property in Minnesota. In 1942 it began stripping off the surface material covering the ore deposit. The total cost of the stripping operations was $432,-745.98, of which $166,543.55 was incurred before May 1, 1943, and $31,581.-07 was incurred between May 1 and May 31, 1943. It was estimated that, before extraction, there were 1,948,509 net tons of recoverable ore in the mine. In 1943 and 1944 petitioner extracted 395,283 and 486,450 net tons, respectively. On May 1, 1943, the stripping had progressed to such point that ore was uncovered and ready for production, but the first shipment from the mine did not occur until June 15, 1943.

Petitioner's income tax return for the taxable year 1944 was prepared upon the assumption that it was entitled to amortize the total cost of stripping, as a deferred mining expense, in the ratio that the tons of ore mined in that year bore to the total estimated ore reserve. The Commissioner and the Tax Court allowed amortization of only that part of the cost of stripping done after May 31, 1943.

That was made the cut-off date because the Tax Court found as a fact, sustaining the Commissioner's contention, that the mine did not pass from a development to a producing stage before June 1, 1943, and, under the applicable Treasury Regulation, expenditures in excess of net receipts while the mine is in the development stage must be charged to capital account to be recovered through depletion. The matter is of practical importance to petitioner because it was on percentage depletion and, thus, could not recover the disallowed sum through cost depletion.[2]

Section 23(m)[3] of the Internal Revenue Code allows the deduction, as an ordinary and necessary business expense, of a reasonable amount for depletion, such allowance to be made according to the Commissioner's regulations. The pertinent regulation precludes the taking of such a deduction for expenditures in excess of net receipts while the mine is still in a development stage and sets up the tests to determine when that stage has been passed.[4] Petitioner concedes that it may not treat stripping expense incurred before production as a deferred mining expense if the regulation is applicable.

The gist of petitioner's argument, here and in the Tax Court, is that, from the very nature of things, there is such a fundamental difference between deep-pit and open-pit mining that in the latter method there is really no development stage corresponding to that of a deep-pit

---

1. The memorandum decision of the Tax Court is not officially reported.

2. 26 U.S.C. § 114(b) (4).

3. "Deductions from gross income.
   "In computing net income there shall be allowed as deductions:
   &ast; &ast; &ast; &ast; &ast;
   "(m) *Depletion.* In the case of mines &ast; &ast; &ast; a reasonable allowance for depletion &ast; &ast; &ast; according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. &ast; &ast; &ast; " 26 U.S.C. § 23(m).

4. *"Allowable capital additions in case of mines.* (a) All expenditures in excess of net receipts from minerals sold shall be charged to capital account recoverable through depletion while the mine is in the development stage. The mine will be considered to have passed from a development to a producing status when the major portion of the mineral production is obtained from workings other than those opened for the purpose of development, or when the principal activity of the mine becomes the production of developed ore rather than the development of additional ores for mining." U.S.Treas.Reg.111, § 29.23(m)–15(a), 26 Code Fed.Regs. § 29.23(m)–15(a) (1949).

mine. If there is no development stage, then the regulation does not apply to an open-pit mine, and petitioner may treat all pre-production stripping expense as a deferred operating expense to be amortized over subsequent production and sale of iron ore.

In both mining methods it is, of course, necessary to bring power, supplies, and labor to the mineral face so that it can be brought to the surface. It is said that in deep-pit mining, this is done by driving one or more shafts which serve as haulageways. Until that is done, the entire mineral body lies fallow; after it is done, the *entire* mineral body is benefited because each ton must be raised through the shaft. In open-pit mining, the argument runs, this factor does not obtain. There the mineral body lies close to the surface and is obtained simply by removing the relatively thin covering of earth and raising the ore. Petitioner's example best illustrates the asserted difference. In a field of 100,000 tons of ore, if 50,000 tons are exposed by stripping off the overburden, only that 50,000 tons uncovered are benefited. In the case of deep-pit mining, it is said, the original shaft, which is truly development, benefits every ton of ore in the mine, and, thus, it is only good accounting that each ton of ore should contribute to the cost of that shaft. This is accomplished by charging that cost to capital and recovering it through depletion. In open-pit mining, however, stripping off the overburden benefits only the ore thus exposed, and, thus, only that ore, rather than every ton in the mine, should contribute to the cost of that stripping. This would be accomplished by amortizing that cost over the income from the sale of the tons thus exposed. The final point made is that a comparison of the two mining methods shows that stripping is not development of the mine but actually part of the production of ore.

Faced with this apparently novel argument, the Tax Court was not persuaded, but not because it disagreed on the merits. It said:

"The facts of record are too meager to permit the Court to consider and decide any such question. It has no actual knowledge and can not take judicial knowledge of what happens generally in the case of similar mines or what actually happened in this case. * * * The facts of record do not permit the Court to determine what similarity, if any, there was between the stripping operations, prior to June 1, 1943, and the development stage of underground mines. The petitioner failed to sustain its burden of proof on this issue."

Presented with that holding, petitioner filed a timely petition for rehearing, asking for an opportunity to show the characteristics of open-pit mines and stripping operations. The petition also explained that the failure to introduce this proposed testimony at the hearing was due to counsel's assumption that the terms "open-pit mine" and "stripping" had become words of art and were commonly understood to mean the type of mine and mining operations as to which it proposed to offer the above testimony. This petition was denied, erroneously we think.

██ Of course, the disposition of a petition for rehearing is a discretionary matter, Commissioner of Internal Revenue v. Erie Forge Co., 3 Cir., 1948, 167 F.2d 71, but we think the circumstances of this case indicate that there has been an abuse of discretion and that, in all fairness, petitioner should have a chance to present further testimony.

The issue was tried in the Tax Court upon the basis of a stipulation which contained the following statements: "* * * Petitioner owned an open pit iron ore mine * * * designated * * * as its Draper Annex Mine. * * * Petitioner conducted stripping operations with respect to its Draper Annex Mine to remove the surface material over the body of iron ore." The petition excuses the failure to go into further evidentiary detail at the trial on the ground of counsel's assumption that

the terms were commonly understood to mean what he argued that they meant. We think that assumption was justified. Petitioner's contention was based upon a distinction between open and deep-pit mining methods, that is, that in the former case, the mineral is obtained by skimming off the overburden and raising the ore, while in the latter case, the deposit lies too deep to use such method and the ore must be obtained by sinking one or more shafts, from which numerous entries are made and ore, when removed, is raised through the shaft. Petitioner thought that the general extraction methods for each kind of mine were so commonly known that the stipulated facts were sufficient to entitle it to a decision on the merits. Being of that mind, it went to trial without introducing testimony on the matter. It did introduce testimony on another issue, which is not present on this review. It then rested, as did the Commissioner. At the trial, there was no intimation by the Commissioner or the court that the stipulation was incomplete or in any way inadequate to obtain a ruling on the merits. By no means are we to be taken as requiring that the Tax Court give a preview of its final decision. We mention the fact only to show a further reason why petitioner would believe, even during and after the trial, that its stipulated facts were enough. Even the Commissioner's brief in the Tax Court treats the stipulated facts as sufficient to raise the issue. The rehearing was not sought in order to introduce newly discovered evidence or even, as the Commissioner suggests, the newly discovered importance of previously known evidence. That is the very point—petitioner knew of the evidence and, also, of its importance; indeed, it thought that the matter was so notorious that everybody else knew of it too. In the circumstances, it should be allowed a chance to fill in the missing details.

We need not go off on the law of judicial notice, although we think the Tax Court was mistaken in holding that it could not notice the point. It might very well be that there are many matters which a trial court may notice but cannot be required to notice,[5] and this point may be one of them. But, whether or not the general methods used in exploiting deep-pit and open-pit mines are sufficiently notorious to be the proper subject of mandatory judicial notice, they are sufficiently well known to justify petitioner's assumption and consequent failure to enlarge on the stipulated facts and to require that its petition for rehearing be granted. In the interest of substantial justice, therefore, the case will be remanded for a rehearing in the Tax Court.[6] Saltonstall v. Commissioner of Internal Revenue, 1 Cir., 1945, 148 F. 2d 396; Knight Newspapers, Inc. v. Commissioner of Internal Revenue, 6 Cir., 1944, 143 F.2d 1007.

Perhaps we should judicially notice the difference in mining methods and then decide the merits. We are very reluctant, however, to step out into the darkness of a new question of tax law without the guiding light of the Tax Court's expert judgment.

The judgment of the Tax Court will be vacated and the cause will be remanded for proceedings in accordance with this opinion.

---

5. 9 Wigmore, Evidence § 2568(a) (3d ed. 1940).

6. "§ 1141. Courts of review

&ast; &ast; &ast; &ast; &ast; &ast;

"(c) Powers

"(1) To affirm, modify, or reverse. Upon such review, such courts shall have power to affirm or, if the decision of the Tax Court is not in accordance with law, to modify or to reverse the decision of the Tax Court, with or without remanding the case for a rehearing, as justice may require." 26 U.S.C. § 1141(c) (1).