WARREN LESLIE, SR., AND ESTATE OF MAY K. LESLIE, DECEASED, WARREN LESLIE, SR., EXECUTOR, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4619. Promulgated March 15, 1946.

*Warren Leslie, Jr., Esq.,* for the petitioners.
*J. Richard Riggles, Jr., Esq.,* for the respondent.

492

MURDOCK, *Judge*: The petitioners, on their return for 1940, claimed a deduction of $33,003.09 as a loss from storm. They had been allowed a deduction for the hurricane loss in 1938. They now have discarded that theory of the 1940 deduction and claim a deduction of $26,181.77 under section 23 (e) (2) of the Internal Revenue Code as a loss from a transaction entered into for profit not connected with their business. They claim that the property was converted to an income-producing purpose immediately after the hurricane when it was placed in the

hands of an agent for sale; its fair market value at that time was not less than $39,640.18; a loss of the difference between that value and $11,800, the amount of the mortgage, was sustained when the property was transferred to the mortgagee. The record does not show that May sustained or incurred any loss in regard to this property in a transaction entered into for profit.

Loss on a personal residence is not deductible for obvious reasons. However, a residence may be abandoned as such and converted to a profit-inspired use from which a deductible loss may be incurred. *Joseph F. Cullman, Jr.*, 16 B. T. A. 991. It must appear that the loss was sustained in the new transaction and was not a carry-over in whole or in part of a loss already incurred in the personal residence use of the property. Cf. *Herbert L. May*, 19 B. T. A. 229. The personal residence use must be terminated, the loss from that use must be fixed in some way, a new basis for gain or loss must be established, and a profit-inspired transaction must be entered into. There must be a showing that the loss was sustained as a result of the new profit-inspired transaction or use. A decline in value during a period while the owner is merely trying to enter into a profit-inspired transaction with the property is regarded as a part of the loss incidental to the personal use, without which the loss would not have occurred. *Frances G. Smith*, 23 B. T. A. 1134. Merely permitting the property to be offered for sale after deciding not to occupy it further is not sufficient to terminate the loss from residential use and initiate a new transaction for profit within the meaning of section 23 (e) (2). *Rumsey* v. *Commissioner*, 82 Fed. (2d) 158; certiorari denied, 299 U. S. 552; *Morgan* v. *Commissioner*, 76 Fed. (2d) 390; certiorari denied, 296 U. S. 601; *Gevirtz* v. *Commissioner*, 123 Fed. (2d) 707; *Phipps* v. *Helvering*, 124 Fed. (2d) 292; *W. H. Moses*, 21 B. T. A. 226; *Frances G. Smith, supra.*

Here, if the above obstacle were not present, there is still an inadequate showing as to the basis of the property in the alleged new use. Value at the date of conversion would fix the amount of the personal-use loss and give a basis for gain or loss in the new use. *Joseph F. Cullman, Jr., supra.* The petitioners say that the value was $39,640.18 after the hurricane, but they fail to prove it. They rely upon two tax receipts which merely show that in 1939 the assessed value was reduced from $40,000 to $30,000. Was the actual value more or less? A witness for the respondent said it never exceeded the amount of the mortgage after the hurricane. A witness for the petitioner introduced some figures on costs and his unsupported notion of some adjustments thereto after a fire in 1930 and the hurricane in 1938. He did not profess to know anything about the value of the property. The building was old and cost figures are not very helpful. The petitioners suffer as a consequence of the inadequate proof.

The record shows that the house was terribly twisted and torn by the storm. It is reasonable to believe that it had little value thereafter. It does not appear that the value of the entire property after the hurricane exceeded $11,800, the amount of the mortgage. Perhaps an insufficient deduction was allowed for the storm loss in 1938, but the statute does not allow any deduction for that loss in 1940. The petitioners have failed to show that they sustained any loss in 1940 from a transaction entered into for profit.

The petitioners contend that the caretaker expenses are deductible under section 23 (a) (2) as nonbusiness expenses paid in the maintenance and conservation of property held for the production of income. They rely upon *Mary Laughlin Robinson*, 2 T. C. 305. The applicable regulation provides that ordinary and necessary expenses in connection with the conservation or maintenance of a residence are not deductible, even though efforts are being made to sell, prior to the time the property is rented or otherwise appropriated to income-producing purposes. Regulations 103, sec. 19.23 (a)–15 as amended by T. D. 5196. Here, as in the case of losses claimed on former residences, the necessity for administrative purposes of some unmistakable act of conversion or appropriation is obvious. The property in the *Robinson* case had been offered for rent and a part of it had been rented. Here the property was not offered for rent and no part of it had been rented. The efforts to sell did not appropriate it to income-producing purposes. It was still just an unoccupied residence. Cf. *Eleanor Saltonstall*, 2 T. C. 1099; reversed on another point, 148 Fed. (2d) 396. It was not being held for income-producing purposes and the caretaking expenses are not deductible.

The debt from McEneny was worthless when acquired by the petitioner as the result of his payment under his guaranty. It is deductible under section 23 (k).

The petitioners' argument in regard to the insurance premiums is too strained. They have found no case to support it. They contend that those premiums are deductible under section 23 (a) (2) as nonbusiness expenses paid to collect dividends which otherwise would be taken to pay the premiums and were paid to conserve stock held for the production of income, since the policies served to release income-producing stock which otherwise would have been required as collateral. This new provision of the code was not intended to make deductible expenditures which are not in their nature expenses. *Don A. Davis*, 4 T. C. 329, 334; affd., 151 Fed. (2d) 441; certiorari denied, Feb. 25, 1946. The insurance premiums were paid to keep the policies alive, not to collect income. They served to increase the value of the policies. They are a form of saving. They are not ordinary and necessary expenses under the circumstances of this case. They do not bear a sufficiently reasonable or proximate relation to the collection of

the dividends on the stock of May held as collateral or to the conservation of other income-producing securities owned by her to make them deductible under section 23 (a) (2).

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

DISNEY, *J.*, dissenting: Prior to the amendment of section 23 (a) (2) of the Internal Revenue Code by section 121 of the Revenue Act of 1942, expenses of caring for property were deductible only if business property, for the simple reason that section 23 (a) (2) provided for the deduction only of expenses "paid or incurred in carrying on any trade or business"—although section 23 (e) provided for deduction of lósses incurred either in trade or business or in a transaction entered into for profit. This distinction led to such decisions as that in *Higgins* v. *Commissioner*, 312 U. S. 212. It is apparent from the history of section 121 of the Revenue Act of 1942 that Congress desired to broaden the concept of what expenses of carrying property should be deducted; for in the Committee Reports of the House of Representatives, 77th Congress, 1st sess., July 14, 1942 (21 C. B., part 2, p. 410), we find the following:

> The existing law allows taxpayer to deduct expenses incurred in connection with a trade or business. Due partly to the inadequacy of the statute and partly to court decisions, nontrade or nonbusiness expenses are not deductible, although nontrade or nonbusiness *income* is fully subject to tax. The bill corrects this inequity by allowing all of the ordinary and necessary expenses paid or incurred for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income. Thus, whether or not the expense is in connection with the taxpayer's trade or business, if it is expended in the *pursuit of income* or in connection with property *held* for the production of *income*, it is allowable. [Italics supplied.]

It seems clear from the above language that there was a feeling in Congress that if income from property was subject to tax, the expenses of carrying such property should be deducted, even though they were "nontrade or nonbusiness expenses." The statute, so far as here concerned, requires only that the expense be "for the management, conservation, or maintenance of property held for the production of income."

In accordance with such statute, the regulations were amended, and Regulations 103, section 19.23 (a)–15, amended by T. D. 5196, so far as pertinent here provides in substance, that "income" includes "gains from the disposition of property," that expenses of maintaining investment property (not primarily for hobby, sport, or recreation) are deductible, even though the property is merely held to minimize a loss, and that the question whether property is held for production of income *rather than* primarily as a sport, hobby, or recre-

ation, is to be determined from all the circumstances. Then the regulation continues:

Ordinary and necessary expenses in connection with the management, conservation, or maintenance of property *used* as a residence by the taxpayer or acquired by him *for* such use are not deductible, even though the taxpayer *makes efforts to sell* the property *at a profit* or to convert it to income-producing purposes, and even though the property is not occupied by the taxpayer as a residence, unless prior to the time that such expenses are incurred the property has been rented *or otherwise appropriated* to income-producing purposes by some *affirmative act* and has not been reconverted. [Italics supplied.]

The regulation, except the paragraph last above quoted as to residence property, is in substance the same as the committee report of the House of Representatives (appearing on pages 420, 421, 21 C. B., part 2), and the Senate committee report is, though not to such length, in substance largely the same.

The paragraph above quoted from the regulations as to residence property is in effect added by the regulation to the House committee report. I find nothing tangible on the subject in the conference report.

In my view, a reading of the new statute, and the regulations and the committee reports thereon discloses an intent to distinguish on this question of deduction of expense of carrying property, primarily between property carried as "a sport, hobby, or recreation" on the one hand, and property held "for the production of income" on the other. In addition, of course, section 24 (a) (1), prohibiting deduction of "personal, living, or family expenses" requires consideration of a residence and the expenses of maintaining it. In other words, if property is not a sport, hobby, or recreation, expense of holding it, even to minimize a loss, should be allowed—without application of any previous ideas of trade or business; but if the personal, living, or family expense of a residence is involved, it, under a separate statute, may not be deducted.

Section 121 of the Revenue Act of 1942 amended only section 23, and in nowise touched upon section 24 (a) (1). In short, Congress, for expense deduction purposes, merely divided property not devoted to business into two classes, hobby property and property held for production of income—and did not legislate with reference to residences or personal expenses, leaving the rules as before on that matter.

The majority opinion discloses: That the property had been occupied by petitioner and her husband as a residence for a number of years prior to 1938; that it was "terribly twisted and torn by the storm. It is reasonable to believe that it had little value thereafter"; that it was so badly damaged by the hurricane that it could not be occupied without extensive repairs; that it was decided not to occupy it again, and the repairs were never made and it was never occupied by the petitioners again; but, after a real estate agent, upon their agreement,

showed the property to several people without getting an offer for the property, it was conveyed to a mortgagee in the summer of 1940— less than two years after the hurricane—to save the mortgagee the expenses of foreclosure on a mortgage of $11,800; and that the petitioners recovered $27,000 insurance after the hurricane. Surely all this is a complete showing that the property had ceased to be a residence, a personal, living, or family matter, so as to require cessation of denial under section 24 (a) (1) of carrying expenses because of such personal element. After passage of section 121, a showing of conversion to business property need not be made under section 23 (a) (1) (A), and the petitioner need only demonstrate that the property was held for production of income (even though only "gains from the disposition of property" and though "held merely to minimize a loss"), under section 23 (a) (2). Under the first part of the regulation above quoted, such showing required mere holding for sale. Under the latter part the residence situation is covered, and an affirmative act of appropriation to income-producing purposes is required as to a *residence*, even though it is not occupied as such. What, however, of a *former* residence, a property which is affirmatively shown to have lost that status? The whole history of this question convinces me that nothing need be shown except a change from a residence status to a nonresidence status, for the passage of the act in 1942 is proof enough that conversion to a business property is not requisite, and if so (and the property is not mere hobby, which is nowhere suggested in this case, but negatived by the former residence feature), then all that the residence idea adds is the provision of section 24 (a) (1). But since the application thereof disappears with the end of residence, and the house becomes mere property, logically the latter part of the regulation is seen as altogether inapplicable. In my view, if property is not hobby, only abandonment thereof as residence is required to be shown, for I think that the statute was definitely intended to allow carrying expenses as to nonhobby property, except when section 24 (a) (1) puts the personal element into the picture where the property is used as a home, entailing such personal element. That factor here affirmatively being shown to have ceased, other showing is outside the statute.

The majority opinion, however, tends to go back to former criteria when it says:

* * * Here, as in the case of losses claimed on former residences, the necessity for administrative purposes of some unmistakable act of conversion or appropriation is obvious. * * *

Such necessity is not obvious to me, for I can not find it in the statute, by text or implication.

I think section 121 of the Revenue Act of 1942 was definitely intended to do away with any comparison with losses, and that we

should view the matter only to inquire whether property is "held for the production of income," and not set up requirements based on losses; or the former statute, or analogy thereto. Conversion or appropriation, though necessary to change a residence to business property, is logically unnecessary to divest it of a personal character. If such test is still requisite, the statute seems to have accomplished little, if anything. "As a general rule an actual removal from, and cessation of use of, the premises may raise a presumption of abandonment * * *," 40 C. J. S. 671, Homesteads. *Evans* v. *Evans*, 210 N. W. 564—abandonment held from fact of family moving to town, after destruction of home by fire. No rule of law requires any "unmistakable act of conversion or appropriation" as proof of abandonment of homestead—which *per se* in logic ends basis for denial of the personal family expense therewith connected. Whatever is convincing that residence in the property has stopped, is sufficient, both in law and logic.

However, even under the regulation any facts which show that property is, in the words thereof, "appropriated to the production of such income" are sufficient basis for the deduction; and I think such showing was here made, under any reasonable test.

We have here no mere moving out of a residence, with question as to state of mind of the owner and as to temporary or permanent nature of the moving, leaving in doubt whether the property has ceased to have a "personal, living, or family" residence status, but a case where an act of God, a hurricane, has so badly damaged the property that it could not be occupied thereafter without extensive repairs, where the petitioners decide not to occupy it again and never occupied it again, where they put the property up for sale with an agent who, though he never obtained an offer, showed the property to several people in an effort to do so. True, price was not set, but that is not infrequent in real estate negotiations until a prospect is found. It seems to me that if the true test, since section 121 of the Revenue Act of 1942, is whether property (not a hobby) is held for production of income, even though it be only upon "disposition of property," and if the only exception thereto is tied in with section 24 (a) (1), that is, personal, living, or family expenses, it is clear that the expense of carrying property damaged so badly that it could not be occupied without extensive repairs, and where decision was made not to occupy it again and it was not occupied, but attempts were made to sell it, that all reason for denying application of section 121, Revenue Act of 1942, disappears. Property so unfit for residential purposes might be held for years, and apparently here was held for about two years, in a vain effort to sell it "to minimize a loss with respect thereto," in the words of the regulation, and I would not make the allowance of deductions for carrying expense depend upon whether

or not it was possible to find a purchaser or buyer. The very impossibility of obtaining an offer is some indication that the property was not fit for residence purposes. In my opinion such efforts to find a buyer for a property in the condition seen here is an appropriation to income-producing purposes, offering no difficulty in administration. Realistically viewed, this house appears fit only for holding—for less than two years, when it was turned over to the mortgagee. To deny the deduction is, in my view, to go backward instead of with the new statute. I therefore respectfully dissent. I regret the length of this dissent, but I feel that this is a crucial stage in an important subject.

LEECH, *J.*, agrees with this dissent.