Estate of Emilie L. Heine, Deceased, Carl M. Jacobs. Executor v. Commissioner.
Estate of Emilie L. Heine
Docket Nos. 25964, 27831.
United States Tax Court
1951 Tax Ct. Memo LEXIS 128; 10 T.C.M. (CCH) 738; T.C.M. (RIA) 51252; August 24, 1951
*128 During the period 1914-1919 decedent acquired certain real property in the City of Cincinnati. At the time of the original purchase in 1914, the marriage of decedent's daughter to C. M. Jacobs was impending, and the property was acquired to be the couple's home following their marriage. Some time subsequent to the acquisition but prior to the wedding, Jacobs spoke with decedent concerning payment of rent and it was orally agreed that he would furnish decedent with any necessary legal work or financial advice that might be required in lieu of rent. Jacobs and his family occupied the property under this arrangement until 1931 when they moved to a newly acquired home of their own. Subsequently, decedent listed the house for rent or for sale with several real estate agencies, and strenuous efforts were made to dispose of the property. Efforts were also made to have the property rezoned for commercial purposes. Held: Decedent, in 1914, did not enter into the transaction for profit within the meaning of section 23 (e) (2), I.R.C. Held, further, on the vacation of the property by Jacobs in 1931, immediately followed by decedent's attempts to rent or sell and to have *129 rezoned for commercial purposes, the property was appropriated to business purposes, and the loss sustained on its sale in 1945 is deductible under section 23 (e) (2), I.R.C.
William R. Seaman, Esq., 2301 Union Central Bldg., Cincinnati, O., and Henry W. Hbson, Jr., Esq., for the petitioner. Elmer E. Lyon, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in the Federal income tax of Emilie L. Heine for the years 1945, 1946, and 1947, as follows: 1945
1946
1947
Income Tax
(Dkt. No. 25964)
$517.74
$741.00
Income Tax
(Dkt. No. 27831)
$14,916.54
Petitioner *130 filed a claim for a refund of $36,851.25 representing Federal income tax paid for the taxable year 1945. These cases, which were consolidated for hearing and disposition, present the following questions: 1. Was the property acquired by Emilie L. Heine during the period 1914 to 1919 and occupied by her daughter and son-in-law from 1914 to 1931, inclusive, property used in a trade or business within the meaning of section 23 (e) of the Internal Revenue Code during the period of her ownership, 1914 to 1945? 2. Was such property used in a trade or business during the period 1931 to 1945? 3. Was such property acquired by Emilie L. Heine in a transaction entered into for profit within the meaning of section 23 (e), supra? Findings of Fact Carl M. Jacobs is the duly appointed and acting executor of the Estate of Emilie L. Heine, deceased, who died on January 2, 1949. The income tax returns for the period here involved were filed with the collector of internal revenue for the first district of Ohio. Emilie L. Heine (sometimes hereinafter referred to as "decedent"), during the period 1914 to 1919, acquired Lots 1, 2, 3, 4, and 10 located at the intersection *131 of Annwood Avenue and Madison Road, in Cincinnati, Ohio. Lots 2 and 10 which adjoin each other on the east side of Annwood Avenue have a combined frontage on that avenue of 169.1 feet, and were acquired by decedent in 1914 at a cost of $25,000. Lots 3 and 4 adjoin each other and have a combined frontage on the north side of Madison Road of 182.42 feet. These lots were acquired by decedent in 1914 at a cost of $38,114.33. Of this cost $13,114.33 was allocable to the building which was then, and still is, located on Lot 3. Lot 1 adjoins Lot 10 on the north and Lot 3 on the east. It fronts 178 feet on Annwood Avenue and 102 feet on Madison Road, and was acquired by decedent in 1919 at a cost of $25,000. Of this cost $1,000 was allocable to a building thereon. This building has since been razed. The total cost of all these lots and improvements was $88,114.33. At the time of the acquisition of the property acquired in 1914, Emilie L. Heine was a widow with two daughters. One daughter and Jacobs were planning to be married. Decedent was a woman of considerable property, both real and personal. She acquired Lots 2, 3, 4, and 10 some four months before the marriage of her daughter to Jacobs. *132 During the time between the acquisition of such property and the marriage of her daughter, decedent had some alterations and repairs made on the dwelling located on Lot 3 readying it for occupation by her daughter and Jacobs after their wedding. The dwelling on Lot 3 is a 15-room house, consisting of three stories. The outside walls of the house are constructed of stone and stucco. On the second floor there are five bedrooms and on the third floor there are maids' rooms and maids' bath. On the first floor there is a reception hall, a den with unusual paneling, and a pantry and a kitchen which have tile floors. Most of the rooms on the first floor have fireplaces. This house was built some time in the 1890s. In 1931 it had a remaining useful life of 64 years. Some time during the period when the alterations were being made on the dwelling house, and before Jacobs and decedent's daughter were married, Jacobs spoke to decedent about the arrangement by which he and his bride would occupy the property and decedent replied that she naturally would have legal work to be done from time to time and if it was satisfactory with him that she would ask him to do whatever legal work she had *133 to do and that would constitute compensation for the occupation of the property. In addition to legal services Jacobs agreed to assist her with regard to her investments. Jacobs had been practicing law about four years in 1914. After the wedding, in 1914, he and his wife moved into the property in question and lived there until some time in 1931. Jacobs purchased a home in a section known as Indian Hills, in 1927, but by the terms of the purchase agreement he was not able to get possession of the property until 1931. Jacobs reported no income on his individual Federal income tax returns for the period 1914 to 1931, inclusive, as income received from decedent by reason of his occupancy of the property, and no depreciation was claimed by decedent. During the period 1914 to 1931, in accordance with his agreement with decedent, Jacobs handled all of her legal affairs except those arising in connection with certain real property inherited by her from her father and from the preparation of income tax returns. He also advised her with regard to her investments without charging for his services. At the time of acquisition of Lot 1, in 1919, decedent leased it back to the grantor for *134 a period of two years from 1919 to 1921. The annual rental under this lease was $1,500. Decedent never gave nor offered to give the property in question to Jacobs, and after Jacobs ceased to occupy it in 1931 continuous efforts were made by her through various realtors to rent or sell the property. During this period she received a number of offers which were unacceptable to her. Finally, in 1945, she sold Lots 1, 2, 3, 4, and 10 through Frederick A. Schmidt, Inc., realtors, to S. E. Goltra, for $26,500. The realtor received a commission on the sale from decedent in the amount of $1,325, making a net sales price to her of $25,175. In 1931 when the above tract of land and buildings were first offered for rent or for sale, it had a fair value of $60,000. At that time the house had a fair value of $15,600. Prior to 1924 the property here in question was not subject to any zoning restrictions. In 1924, Lots 1, 3, and 4 were zoned as Residence B, and Lots 2 and 10 were zoned as Residence A under the Cincinnati Zoning Ordinance 1924-33. This zoning was effective during the entire period from 1924 to 1933, and left Lots 1, 3, and 4, which fronted on Madison Road, available for a variety *135 of purposes, including apartment or multiple family houses, hotels, and other commercial uses. In June of 1933, Lots 1, 3, and 4 were rezoned as Residence A, which, for all practical purposes, limited their use to single-family residence purposes. The zoning change in 1933 materially decreased the value of the property. Determined efforts were made by decedent to have the property rezoned so as to make it available for other than residential purposes. In particular, both before and after the rezoning in 1933, Jacobs, on behalf of decedent, appeared before the City Planning Commission, the City Planning Committee of Council and all of the various bodies and authorities that had anything to do with the zoning of real estate. His efforts were unsuccessful. Decedent returned the difference between the net sales price and her cost of the property as a capital loss in her 1945 Federal income tax return, and applied $636.58 of the reported loss against her income in that year. The balance of the reported loss was carried over and applied against income as follows: 1946, $1,000; 1947, $29,833.08. Opinion VAN FOSSAN, Judge: The dominant issue here is whether petitioner's decedent is entitled *136 to deduct the loss sustained by her in the taxable year 1945 on the sale of certain real property acquired by her in 1914. This is not a case involving conversion of a piece of property to business purposes after such property had been previously used and occupied as the taxpayer's residence. Cf. Warner v. Commissioner, 167 Fed. (2d) 633 (C.A. 2, 1948, affirming a Memorandum Opinion of this Court [6 TCM 582]; Warren Leslie, Sr., 6 T.C. 488. Nor is it one involving property acquired by inheritance from which a realization of profit was immediately sought. Cf. N. Stuart Campbell, 5 T.C. 272; Estelle G. Marx, 5 T.C. 173. Here we find that the decedent had no intention of making the property in question a personal residence when it was acquired or at anytime thereafter. At the time the original purchase was made, decedent's daughter and Jacobs were planning their marriage, and the property was procured by decedent to be used as a residence for the young couple after the wedding. Some time subsequent to the purchase and prior to the wedding, Jacobs spoke to decedent concerning the payment of rent and agreed to furnish *137 her any legal or financial advice she might require in lieu thereof. We have found that petitioner did render such services from time to time during his occupancy whenever the necessity therefor arose. Petitioner contends that this oral agreement constituted a lease, and the professional services expected and actually rendered in accordance therewith show an intent on the part of the decedent to gain a profit, and accordingly constitutes a "transaction entered into for profit" within the meaning of section 23 (e) (2) of the Internal Revenue Code. [1]
When one acquires property there may be various or several motives. The question of which motive is dominant must be resolved by reference to the facts. In the instant case we are convinced that the decedent's *138 primary motive in acquiring the property was to obtain a home for her daughter and Jacobs to use following their marriage. We seriously doubt that she had any thought of profit in any form at the time of the purchase. It does not necessarily follow, however, that this state of mind continued throughout the 31-year period that decedent was owner of the property. Jacobs and his family vacated the property and moved to a home of their own in 1931. At this point the property was unquestionably appropriated to business purposes by decedent. The situation here is not complicated by decedent's personal living problems for the record clearly shows that she at no time intended making this property her home. The fact that the property was originally acquired as a home for Jacobs and his wife is not conclusive. After moving to the new home in 1931 they had no interest in the property in question. Decedent never occupied the property as a residence. The house was immediately listed for rent or for sale with various real estate agencies and remained so listed until it was finally sold in 1945. During this period several offers to rent or to buy were received and rejected as not offering a satisfactory *139 consideration. Also, during this period strenuous efforts were made to obtain a revision of zoning restrictions to allow a remodeling of the property into a multiple dwelling unit or apartment house. Had these efforts been successful a profitable rental could have been achieved. When the efforts at rezoning were unsuccessful and decedent was unable to obtain a satisfactory tenant for the house as it then stood, she sold the property at a substantial loss. The loss thus sustained is a loss from a business "transaction entered into for profit" within the meaning of section 23 (e) (2), supra. Estelle G. Marx, supra; N. Stuart Campbell, supra; Mary E. Crawford, 16 T.C. 678. The basis for gain or loss on the property is its value at the time it was appropriated to business purposes in 1931. This value we have found was $60,000. Of this amount $15,600 was allocable to the dwelling house located thereon. The house had a remaining useful life in 1931 of 64 years. The proper depreciation will be reflected accordingly in the recomputation under Rule 50. Decisions will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - * * *
(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or * * *↩