CHARLES F. NEAVE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 30188. Promulgated January 28, 1952.

*Peter H. Kaminer, Esq.*, and *Victor S. Trygstad, Esq.*, for the petitioner.

*William E. Murray, Esq.*, for the respondent.

1240

OPINION.

Murdock, *Judge:* The petitioner contends that the inter vivos trust and the testamentary trust both terminated immediately upon the

death of his mother, and, as a result, he and his brother, rather than the trusts, are the taxpayers entitled to deductions under section 23 (a) (2) for commissions which the trustee thereafter paid to itself, for fees which it paid to attorneys for services in connection with the distribution of the assets of the trusts, the accounting, and the method used for terminating the trusts, and for various miscellaneous administration expenses, including transfer taxes, incurred in connection with the distribution of the trust assets, paid by the trust during the period of settlement. The petitioner's father, who created the trusts, did not intend that they should continue as active trusts after the death of his wife. Nevertheless, they did not terminate immediately upon the death of the life beneficiary but thereafter the trustee had some further duties to perform as trustee before the trusts could terminate. A trustee, required to distribute the trust property to remaindermen, is allowed by the laws of New York a reasonable time after the death of the life beneficiary within which to perform that duty and conclude its trusteeship. The corpus and income continue to belong to the trust during that period. *Della M. Coachman*, 16 T. C. 1432, and cases cited therein. No undue delay on the part of the trustee in making the distribution and in concluding its fiduciary duties appears in this case. It received fees for acts performed as trustee in each trust after the life tenant died. They included fees for receiving income and fees based upon corpus distributed. The trustee's fees, which the petitioner seeks to deduct, were paid by the trustee to itself for duties performed after the death of the life tenant and obviously were not for duties performed after there ceased to be any trusts. The attorneys' fees were for services rendered to the trustee during the continuation of the trusts after the death of the life tenant, and the miscellaneous expenses were incurred and paid by the trustee during that same period. These amounts were not expenses of the remaindermen but were expenses of the trusts. They were not paid by the remaindermen but were paid by the trustee. They were not paid on behalf of the remaindermen but were paid on behalf of the trustee as a part of its duty as trustee. The remaindermen were under no obligation to pay any of the amounts. These facts distinguish this case from such cases as *Hord* v. *Commissioner*, 95 F. 2d 179, *Estate of John E. Morrell*, 43 B. T. A. 651, and *Martin Thomas O'Brien*, 47 B. T. A. 561, cited by the petitioner. The trusts, still taxable entities, deducted these expenses on their income tax returns for 1945. They were the taxpayers to which the law allows the deductions because they incurred and paid the expenses. The petitioner was not the taxpayer who either paid or incurred the expenses, and is not the taxpayer to which they are allowed by the law as deductions. *Anstes* v. *Agnew*, 16 T. C. 1466.

The petitioner makes a separate argument that he is entitled to these deductions upon a theory based upon principles set forth in *Helvering v. Clifford*, 309 U. S. 331. He claims that he and his brother were in control of whatever trusts existed after the death of their mother. The trustee complied with their wishes in distributing the corpora of the trusts, but these were not retained-control trusts similar to the trust involved in the *Clifford* case. The reasons for disregarding the Clifford trust for tax purposes do not apply to these for the short period in 1945 after the death of the life beneficiary. The Court finds no merit in this argument of the petitioner. Cf. *Marie E. Meier*, 16 T. C. 425.

The next issue is whether the petitioner is entitled to the benefit of capital loss carry-overs resulting from net capital losses sustained by the trusts from the sale of securities during the years 1942, 1943, and 1944, while the life beneficiary was living. Section 117 (e) (1) provides:

> If for any taxable year beginning after December 31, 1941, the taxpayer has a net capital loss, the amount thereof shall be a short-term capital loss in each of the five succeeding taxable years to the extent that such amount exceeds the total of any net capital gains of any taxable years intervening between the taxable year in which the net capital loss arose and such succeeding taxable year.

There is no indication in the Internal Revenue Code or its legislative history that Congress intended this provision to apply to any remainderman taxpayer who in no sense sustained the losses. Cf. *Marie E. Meier, supra*. The petitioner claims, nevertheless, that he is entitled to benefit from these carry-overs on his own tax return for 1945 "under the doctrine of substitution." His argument is that he must use the trust's basis and holding period upon securities which were distributed to him from the trust and, therefore, he must also be treated as standing in the place of the trustee for the purpose of applying the capital loss carry-overs resulting from sales of other securities made by the trustee in prior years while the life beneficiary was still alive. The conclusion does not follow. The trusts used the carry-overs to offset their own gross income for 1945 in accordance with the above provision of the Internal Revenue Code. Their returns for 1945 show no net income and no distributable income. The petitioner never had any claim or right to the assets which the trustees sold in prior years, from which sales the carry-overs resulted. There is no relation whatsoever between those sales and the petitioner's income for 1945. The basis and holding period for particular securities have a close relation with each other for income tax purposes but no such relationship exists between the petitioner's income for 1945 and the prior losses of the trusts. Likewise, there is reason for holding that income and deductions of a trust sometimes retain their character for tax purposes when reported by an income beneficiary,

but such reasons do not apply in the present case. The petitioner being a different taxpayer from the one which sustained the losses is not entitled to the benefit of the carry-overs. Cf. *New Colonial Ice Co. v. Helvering*, 292 U. S. 435.

The final question is whether the petitioner is entitled to a deduction for depreciation in 1945 on a residence in Convent, New Jersey. He built and occupied the residence as his home. He later entered the military service of the United States. Thereafter, he never occupied the house as a residence, but he left most of his furniture in it. He rented the property for a short time during the summer of 1944 for what appears to have been an unusually low rental. There is no evidence to indicate that he wanted or tried to rent the house in 1945. The property was listed for sale on October 27, 1944, and the listing continued until it was sold on August 15, 1946, for $32,000. A taxpayer, who owns and occupies a residence as his own home, is not allowed a deduction for loss on the property or deductions for depreciation on the property, other than for periods during which it is actually rented, unless he abandons the property as his home and converts it to an income-producing use. This conversion is not accomplished by listing the property for sale. Cf. *Warren Leslie, Sr.*, 6 T. C. 488; *Allen L. Grammer*, 12 T. C. 34. It could be accomplished by offering it for rent or by actually renting it under circumstances indicating that it was not to be further occupied as a home. *William C. Horrmann*, 17 T. C. 903. The temporary renting for a few months in one summer is not determinative. Neither the petitioner nor his wife testified. They did not acquire another permanent home until 1946. They did not remove their furniture from the house until at or about the time of the sale. Thus, they could have returned to it at any time during 1945. The evidence does not show that the petitioner intended to convert or actually converted this property from residential to business or income-producing use, and, consequently, does not justify reversing the Commissioner's determination. Furthermore, even if it did, there would still be the question of the basis for a deduction for depreciation on the house. The basis for converted residential property is not necessarily the original cost basis of the property and can not exceed the value of the property at the time converted. *Heiner* v. *Tindle*, 276 U. S. 582; *Charles J. Thatcher*, 24 B. T. A. 1130; *Ralph Perkins*, 41 B. T. A. 1225, affd. 125 F. 2d 150; *Gilbert Wilkes*, 17 T. C. 865. Here, the later sale of the entire property for $32,000 indicates that the value of the house at the date of any possible conversion might have been substantially less than the cost basis of $40,000. The difference would not be a part of the basis but would represent a loss on a residential property which is not deductible either through depreciation or otherwise.

*Decision will be entered under Rule 50.*