MARJORIE M. P. MAY, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 72983.    Filed March 8, 1961.

*Ewing Everett, Esq.,* and *James M. Snee, Esq.,* for the petitioner.
*Sheldon Seevak, Esq.,* for the respondent.

OPINION.

HARRON, *Judge:* The petitioner contends that during 1951 she took affirmative action which converted the status of her yacht, the *Sea Cloud*, from that of property held for personal use to that of "property held for the production of income," within the meaning of the nonbusiness expense and depreciation provisions of the Codes, and that therefore she is entitled to deductions in the years 1952–1955, inclusive, for the ordinary and necessary expenses paid for the conservation and maintenance of such property and for depreciation. The respondent's position is that the actions taken by the petitioner were not sufficient to satisfy the statutory requirement.

In the event the petitioner's contention is sustained, it is agreed that the amounts of the deductions now claimed may be allowed.[1] No question is presented about the amounts of allowances for depreciation, and the respondent does not contend that the nature and amounts of the expenses were not ordinary and necessary.

The claim for deductions for nonbusiness expenses is made under sections 23(a)(2) and 212(a) of the 1939 and 1954 Codes, respectively; the depreciation deductions are claimed under sections 23(1)(2) and 167(a)(2) of those Codes. For convenience, references are made to the 1939 Code.[2] The regulations relating to nonbusiness expenses are Regulations 118, section 39.23(a)–15, and Income Tax Regulations under the Internal Revenue Code of 1954, issued in 1957, section 1.212–1. Consideration is given first to petitioner's claim for the expense deductions.

Personal expenses are not deductible and expenses incurred in maintaining and preserving property devoted to personal use fall within that class. Sec. 24(a)(1), 1939 Code; sec. 262, 1954 Code. In order to come within the scope of the statutory provisions permit-

---

[1] The total amounts of the deductions claimed for the 4 taxable years are as follows:

| Year | Maintenance expenses | Depreciation | Total claimed deductions |
|---|---|---|---|
| 1952 | $42,993.11 | $42,857.14 | $85,850.25 |
| 1953 | 44,935.38 | 42,857.14 | 87,792.52 |
| 1954 | 71,909.10 | 42,857.14 | 114,766.24 |
| 1955 | 40,677.65 | 28,568.37 | 69,246.02 |
| Total | 200,515.24 | 157,139.79 | 357,655.03 |

[2] Sec. 23(a)(2). NON-TRADE OR NON-BUSINESS EXPENSES.—In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year * * * for the management, conservation, or maintenance of property held for the production of income.

Sec. 23(1). DEPRECIATION.—A reasonable allowance for the exhaustion, wear and tear (* * *)—

* * * * * * *

(2) of property held for the production of income.

ting the deduction of nonbusiness expenses there must be conversion of property which has been held for personal use to a different status, that of a holding for the production of income. In the chief authorities dealing with the same issue, the property involved usually has been property which at some time was used as a residence. *Mary Laughlin Robinson*, 2 T.C. 305; *Warren Leslie, Sr.*, 6 T.C. 488; *William C. Horrmann*, 17 T.C. 903; *Charles F. Neave*, 17 T.C. 1237; *Clarence B. Jones*, 22 T.C. 407, reversed on another issue 222 F. 2d 891. See, however, *Marcell N. Rand*, 34 T.C. 1146, involving expenses of maintaining a small yacht during certain seasons, and *Estelle G. Marx*, 5 T.C. 1273.

This case is unusual in that the property involved is a yacht, and the yacht itself is unique. Another unusual aspect is that the petitioner contends that it was not feasible to charter (rent) the *Sea Cloud* and that there was no market for its charter.

Both parties rely on the regulations, as amended. Petitioner argues that subparagraph (h) of section 39.23(a)–15, Regulations 118, which first was promulgated as an amendment by T.D. 5331, 1944 C.B. 98, is favorable to her contentions. That amended regulation was carried forward in subparagraph (h) of section 1.212–1 of the Income Tax Regulations under the 1954 Code. All of the nonbusiness expense provisions in Regulations 118 were carried forward into the 1954 Code regulations. However, in the latter in subparagraph (c), there is an addition to section 39.23(a)–15(b). The amended regulations have been considered. For convenience, references are made to the 1954 Code regulations.

After section 23(a)(2) was added to the 1939 Code by section 121(a) of the 1942 Revenue Act, Regulations 103, section 19.23(a)–15(b), were amended by T.D. 5196, 1942–2 C.B. 96, 99, to cover the nonbusiness expense provisions. That amendment of the regulations provided, in part, that the ordinary and necessary expenses of conserving and maintaining property used as a residence, or acquired for such use, were not deductible—

even though the taxpayer makes efforts to sell the property at a profit or to convert it to income-producing purposes, and even though the property is not occupied by the taxpayer as a residence unless prior to the time that such expenses are incurred the property has been rented *or otherwise appropriated to income-producing purposes by some affirmative act and has not been reconverted.* [Emphasis added.]

In *Mary Laughlin Robinson*, *supra*, the reasoning and conclusion were based partly upon the language of the part of the regulation which is emphasized above. The Commissioner at first did not acquiesce in the *Robinson* case. 1943 C.B. 38. However, in 1944, his nonacquiescence was withdrawn; acquiescence was announced (1944 C.B. 23); T.D. 5331, *supra*, was promulgated; and it retroactively

874

amended the regulations so as to delete the disjunctive requirement of affirmative appropriation to income-producing purposes, emphasized above. The amended provisions, subparagraph (h) of the pertinent regulations, *supra*, are set forth below.[3]

The petitioner places considerable stress upon the present wording of subparagraph (h), arguing that the "change in the regulations evidently left open in each case the question whether the facts therein indicated that the property was no longer held for use as a residence [personal use] but was held for the production of income through rental, efforts to sell, or otherwise." She also contends that it is significant that no reference is made in the amendment of the regulations "to property which was not held for use as a residence but was held for the production of income by sale." Petitioner's arguments dealing with the amended regulations lead to her contentions that the *Leslie, Sr.* case, on which respondent relies, gave no consideration to the amendments to the regulations or their relationship to the acquiescence of the Commissioner in the *Robinson* case, and that either the *Leslie, Sr.* case is distinguishable from the instant case on its facts, or there was error in the reasoning due to the interpretation of what petitioner refers to as "obsolete provisions of the regulations."

The petitioner's contentions are, first, with respect to the facts, that she permanently abandoned the *Sea Cloud* for personal use in 1951 (by moving off furniture and the layup), and converted it into property held for the production of income by her efforts in 1951 and thereafter to sell it at the highest price possible; and, second, with respect to the law, that the pertinent statutory provisions permit the deduction of maintenance expenses paid on property held solely for sale, provided it is not used for personal purposes or held for such possible use in the future; and that it is not necessary either to offer the property for rent or to rent it in order to meet the statutory requirements. In other words, petitioner contends that where there is abandonment of personal use of property and the offering of such property for sale and holding it *solely* for sale, the property qualifies as property held for the production of income.

The respondent takes issue with the petitioner's chief fact contention about permanent abandonment in 1951, and he argues that if at any time from the date of the layup until the yacht was sold, the petitioner had decided to resume using it for personal purposes, she could have done so, in spite of the cost of returning the yacht to seagoing condition, the factor of cost not being a problem to the peti-

---

[3] (h) Ordinary and necessary expenses paid or incurred in connection with the management, conservation, or maintenance of property held for use as a residence by the taxpayer are not deductible. However, ordinary and necessary expenses paid or incurred in connection with the management, conservation, or maintenance of property held by the taxpayer as rental property are deductible even though such property was formerly held by the taxpayer for use as a home.

tioner; and that even if she had abandoned it for personal use, that fact is not sufficient under the statute because the yacht remained available for her personal use. With respect to the question of law, it is the respondent's position that there must be an unmistakable conversion of property to income-producing purposes, that efforts to sell and offering for sale are not sufficient to appropriate property to the required status of property held for the production of income; and that this rule has been established in the *Leslie, Sr.* and *Horrmann* cases. Finally, the respondent argues that the *Sea Cloud* was not held in the taxable years for the production of *income* because the highest asking price was less than petitioner's cost, there never was any possibility that she would derive any gain from the sale, and, consequently, since the yacht was not otherwise held for the production of income, the holding for sale was a holding to minimize personal loss, which does not constitute holding property for the production of *income*. He argues, further, that it was relevant and material for petitioner to introduce evidence about why, after nearly 20 years of personal use, petitioner wanted to sell and finally sold her yacht.

Neither party has cited any case having substantially similar facts, and we find none. This case is distinguishable on its facts from the leading cases cited above in that those cases involved residential property, whereas here the property was designed for petitioner's pleasure and recreation; for entertainment, vacations, and travel; and, in a broad sense, it constituted a hobby. See the dissenting opinion of Judge Disney in the *Leslie, Sr.* case, 6 T.C. at 497, where the distinction of property which is a "mere hobby" from residential property was noted. In *Marcell N. Rand, supra,* the following was noted, *inter alia,* "the question whether property is held primarily for the production of income or primarily as a sport, hobby, or recreation is not determined solely from the intention of the taxpayer but rather from all of the circumstances of the case." We there cited with approval another part of the regulations dealing with the nonbusiness expense provisions in the Codes, which we think cannot be ignored here and it is quoted in material part below.[4]

---

[4] Sec. 1.212–1 NONTRADE OR NONBUSINESS EXPENSES.—* * *
\* \* \* \* \* \* \*
(c) Expenses of carrying on transactions which do not constitute a trade or business of the taxpayer and are not carried on for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income, but which are carried on primarily as a sport, hobby, or recreation are not allowable as nontrade or nonbusiness expenses. *The question whether or not a transaction is carried on primarily for the production of income or for the management, conservation, or maintenance of property held for the production or collection of income, rather than primarily as a sport, hobby, or recreation, is not to be determined solely from the intention of the taxpayer but rather from all the circumstances of the case. For example, consideration will be given to the record of prior gain or loss* in *the taxpayer in the activity, the relation between the type of activity and the principal occupation of the taxpayer, and the uses to which the property or what it produces is put by the taxpayer.* [The part in italics represents an addition to the regulations in the 1954 Code Income Tax Regulations, which was not in Regulations 118.]

The meaning of the term "income" in the phrase "held for the production of income" has been considered with some frequency, within the context of the facts of each case, and in the regulations.[5]   See the *Robinson* case, 2 T.C. at 306-307, 309; H. Rept. No. 2333, pp. 74-76, and S. Rept. No. 1631, pp. 87-88, 77th Cong., 2d Sess., 1942-2 C.B. 429-430, 570-571.   The petitioner contends that it is not material that in view of the large cost of the *Sea Cloud*, she could not have realized any profit from the sale.   Reference is made by petitioner to the committee reports, in this respect, *supra*.

The regulations (see footnotes 4 and 5) incorporate the language of the report of the Ways and Means Committee.   The *Sea Cloud* was not property held for rent or investment, and the examples given in both of the committee reports and in the regulations, namely, a building devoted to rental purposes and investment property, are inapposite.   Rather, the references in the committee reports and regulations to expenses of carrying on transactions carried on *primarily* as a sport, hobby, or recreation are material.   Thus, in both the committee reports and the regulations it is stated that the expenses of carrying on a transaction which does not constitute a trade or business and is not carried on for the production of income or for the maintenance of property held for the production of income, but is carried on primarily as a sport, hobby, or recreation are not allowable as nonbusiness expenses.   We think it is material here in the consideration of the issue that the property involved, the *Sea Cloud*, had been held primarily for recreation and that its cost was so large that no gain could be realized from its sale.   In this respect, petitioner's contention, under all of the facts, that such factors are immaterial is not valid.

In the matter of the alleged abandonment of all personal use of the *Sea Cloud* in 1951, the evidence shows that petitioner gave up the use of the yacht for all personal purposes and never resumed such use, and that the layup of the yacht in 1951 (which has been referred to

---

[5] Sec. 1.212–1   NONTRADE OR NONBUSINESS EXPENSES.—* * *
\* \* \* \* \*
(b) The term "income" for the purpose of section 212 includes not merely income of the taxable year but also income which the taxpayer has realized in a prior taxable year or may realize in subsequent taxable years; and is not confined to recurring income but applies as well to gains from the disposition of property.   For example, if defaulted bonds, the interest from which if received would be includible in income, are purchased with the expectation of realizing capital gain on their resale, even though no current yield thereon is anticipated, ordinary and necessary expenses thereafter paid or incurred in connection with such bonds are deductible.   Similarly, ordinary and necessary expenses paid or incurred in the management, conservation, or maintenance of a building devoted to rental purposes are deductible notwithstanding that there is actually no income therefrom in the taxable year, and regardless of the manner in which or the purpose for which the property in question was acquired.   Expenses paid or incurred in managing, conserving, or maintaining property held for investment may be deductible under section 212 even though the property is not currently productive and there is no likelihood that the property will be sold at a profit or will otherwise be productive of income and even though the property is held merely to minimize a loss with respect thereto.

herein as the "decommissioning" of the ship) was as substantial, complete, and thorough as possible, consistent with the preservation thereof, and was more extensive than ever had been done before, except when the yacht was turned over to the Navy. In 1951, petitioner had her personal belongings and furnishings packed and prepared for removal, and a substantial quantity was moved and taken away in 1951 by a commercial moving concern, and thereafter.

In *William C. Horrmann, supra* at 907, we said:

The mere abandonment of such use [as a personal residence] does not mean that thereafter the property was held for the production of income. But when efforts are made to rent the property as were made by petitioner herein, the property is then being held for the production of income and this may be so even though no income is in fact received from the property, * * * and even though the property is at the same time offered for sale.

In the case of *Charles F. Neave, supra* at 1243, it was stated that a taxpayer who owns and occupies property as his own residence is not allowed deductions for depreciation unless he abandons the property as his residence and converts it to income-producing use; and that such conversion is not accomplished by listing the property for sale but could be accomplished by offering it for rent or renting it under circumstances indicating that it was not to be occupied further as a residence.

The petitioner had the burden of proving that the respondent's determination was erroneous. She did not sustain that burden simply by showing that the *Sea Cloud* was listed for sale at a definite price and that efforts were made to effect a sale.

In explanation of the absence of making efforts to charter the yacht, Ault's testimony was that it was not feasible to offer it for charter or negotiate a charter party because the monthly charge for a charter would have been large and there was not a market therefor. However, it is admitted that petitioner did not wish to charter the yacht, and it was not offered for charter in 1951 before the decommissioning, the taking down of the equipment, and the discharge of the full crew because of petitioner's disinclination to offer it for charter. Obviously, there would not have been as great cost to have prepared the yacht for charter late in 1950, after the cruise that year, or early in 1951, as there would have been after the ship was decommissioned and the crew dismissed, which Ault testified would have cost about $189,500, at least, after the ship had been decommissioned for 1 year.

Petitioner did not testify. The record does not show to what extent, if any, the fact that the yacht's furnishings consisted of petitioner's personal belongings entered into her lack of inclination to offer the *Sea Cloud* for charter before it was decommissioned. If she had wanted to offer it for charter, and had prepared it for that use, which might have involved substituting average furnishings for her antiques

and personal possessions (since a chartered ship must be presented fully equipped), there probably would have been the required conversion to income-producing use. But upon consideration of all of the facts and circumstances, we believe that petitioner merely laid up the *Sea Cloud* and removed belongings not to be sold with it and that in so doing, she did not make the conversion of the yacht to that of property held for the production of income. We are unable to find and conclude that the amended regulations which apply to the issue, or the committee reports, provide support for petitioner's contentions, or that the facts here establish that the *Sea Cloud* was converted and devoted to the production of income during the taxable years.

In each case, the question whether the statutory requirement is met depends upon the taxpayer's proof of conversion to income-producing uses. The test, "held for the production of income," is to be applied within the limitations of the related statutory restriction which denies the deduction of personal expenses. In this case, there is the unusual factor that the kind of property involved, a seagoing luxury yacht, required substantial maintenance expenses under all circumstances as long as it was owned by petitioner. Petitioner reduced the costs of holding the property by the steps taken in 1951 below the amount ordinarily expended when the ship was laid up in between cruises, but that action did not serve to convert the property from personal and recreational property to property held for the production of income, even though a substantial amount of the petitioner's furnishings were removed in 1951 and succeeding years. Nor is the question whether the statutory test is met established solely by petitioner's intention to sell the property. Petitioner did not testify. Intent is a subjective matter. The record does not show why petitioner wanted to sell the *Sea Cloud*. That question, where the property has been devoted at all times to recreational purposes, must be determined from all of the circumstances of each case rather than any formula. In our opinion, the petitioner did not make a definitive conversion of the property to income-producing purposes by reducing maintenance and preservation expenses and laying up the yacht. Such reduction of expenses was a relative matter because the property ordinarily was not continuously used by the petitioner whether or not she desired to make a sale, and such desire is not sufficient proof, under the circumstances here, to convert the property to income-producing purposes. From all of the facts and circumstances, we believe it is clear that petitioner's desire to sell the yacht was for the purpose of reducing her loss on the cost of property she had purchased for purely personal reasons. Although the statutory provision was intended to provide some relief where expenditures were not part of carrying on a business, *Elsie B. Gale*, 13 T.C. 661, 668, affd. 191 F. 2d 79, it may not be applied to extend such relief

merely because of the difficulties of making the required conversion which are chiefly inherent in the type and nature of the property and the expenses involved. The *Robinson, Horrmann,* and other cases relied upon by the petitioner are on their facts distinguishable. We are unable to find as an ultimate fact, after taking into consideration all of the circumstances of this case, that the *Sea Cloud* was held for the production of income during the taxable years. Deductions claimed for maintenance expenses and depreciation are denied.

The respondent has conceded that payments to the Florida Unemployment Compensation Fund were taxes paid and, therefore, are deductible.

*Decision will be entered under Rule 50.*

