**Nat DORFMAN and Annette Dorfman, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REV- ENUE, Respondent.**

**No. 273, Docket 31848.**

United States Court of Appeals Second Circuit.

Argued Jan. 25, 1968.

Decided April 25, 1968.

Paul Friedman, New York City, for petitioners.

Marco S. Sonnenschein, Atty., Dept. of Justice, Washington, D. C. (Lee A. Jackson, William A. Friedlander, Attys., and Mitchell Rogovin, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before MEDINA, MOORE and AN-DERSON, Circuit Judges.

MEDINA, Circuit Judge:

Nat and Annette Dorfman appeal from a judgment of the Tax Court which

held them liable for an income tax deficiency for the year 1960 amounting to $1,966.04 plus an addition to their tax for the same year of $98.30. The only issue involved on this appeal relates to the validity of Treasury Regulation 1.642 (h)–1(b), which effectively denied to petitioners the use of a capital loss carryover under Section 642(h) of the Internal Revenue Code of 1954 for the year 1960. The Tax Court upheld the validity of the Regulation. 48 T.C. 478. We are unable to agree with this conclusion and we reverse.

The factual setting, as determined by the Tax Court, is clear. Annette Dorfman was the sole remainderman of two testamentary trusts created by the wills of Jessee and Michael Winburn. The income of both trusts was payable to Ida Schnitzer for life and at her death the principal was payable absolutely to Annette Dorfman. After Ida Schnitzer's death on December 22, 1955 the assets of both trusts were respectively distributed to Annette Dorfman on August 3, 1956 and November 8, 1956. At the time of their termination the trusts had unused capital loss carryovers resulting from capital losses sustained in the years 1952, 1953, 1955 and 1956.[1] During the years 1957, 1958 and 1959, the Dorfmans realized current capital gains in excess of current capital losses and made use of the capital loss carryovers emanating from the trusts. In 1960 petitioners similarly realized current capital gains in excess of current capital losses and attempted to utilize as part of their capital loss carryover an amount attributable to the trusts' unused capital losses from 1955. The Commissioner of Internal Revenue disallowed this deduction:

It is determined that the deduction claimed in the amount of $7,413.68 for the unabsorbed portion of a capital loss carryover incurred by two testamentary trusts in the year 1955 may not be allowed on your return for the year ended December 31, 1960, in accordance with the provisions of Section 642(h) and other provisions of the Internal Revenue Code of 1954.

In a subsequent proceeding the Tax Court held that Section 1.642(h) (1) of the Income Tax Regulations was valid as it was not unreasonable or clearly contrary to the will of Congress and that it prevented the Dorfmans from utilizing in 1960 the unabsorbed portion of the trusts' capital loss carryover from 1955.

Both Section 1212 of the Internal Revenue Code of 1954, as originally enacted,[2] and Section 117(e) (1)[3] of the 1939 Code,

[1].

| Year | Trust No. 117204 | Trust No. 117438 | Total |
|------|------|------|------|
| 1952 | $ –0– | $ 41.81 | $ 41.81 |
| 1953 | 465.32 | 92.41 | 557.73 |
| 1954 | –0– | –0– | –0– |
| 1955 | 20.60 | 71,981.89 | 72,002.49 |
| 1956 | –0– | 819.37 | 819.37 |
| Total | $485.92 | $72,935.48 | $73,421.40 |

[2]. Section 1212. *Capital loss carryover*
If for any taxable year the taxpayer has a net capital loss, the amount thereof shall be a short-term capital loss in each of the 5 succeeding taxable years to the extent that such amount exceeds the total of any net capital gains of any taxable years intervening between the taxable year in which the net capital loss arose and such succeeding taxable year. * * *.

[3]. Section 117(e) *Capital loss carry-over*.
(1) *Method of computation.* If for any taxable year beginning after December 31, 1941, the taxpayer has a net capital loss, the amount thereof shall be a short-term capital loss in each of the five succeeding taxable years to the extent that such amount exceeds the total of any net capital gains of any taxable years intervening between the taxable year in which the net capital loss arose

permitted a taxpayer to "carryover" a net capital loss sustained in any taxable year to the five succeeding taxable years. However, prior to the enactment of the 1954 Code a remainderman succeeding to the corpus of a trust could not at the same time utilize an unused capital loss carryover attributable to the trust. See Neave v. Commissioner of Internal Revenue, 17 T.C. 1237 (1952). To remedy this inequity the Congress enacted Section 642 (h)[4] which extends the benefits of the loss carryover provisions of Section 1212 to remaindermen following the termination of trusts.[5] In accordance with the directive contained in Section 642(h) the Commissioner, in 1956, issued Regulations relating to the availability of the capital loss carryover and one of these Regulations lies at the heart of the dispute in the instant case. Section 1.642 (h)–1 provides:

(a) If, on the final termination of an estate or trust, a net operating loss carryover under section 172 or a capital loss carryover under section 1212 would be allowable to the estate or trust in a taxable year subsequent to the taxable year of termination but for the termination, the carryover or carryovers are allowed under section 642(h) (1) to the beneficiaries succeeding to the property of the estate or trust. See § 1.641(b)–3 for the determination of when an estate or trust terminates.

(b) The net operating loss carryover and the capital loss carryover are the same in the hands of a beneficiary as in the estate or trust and are taken into account in computing both taxable income and adjusted gross income. The first taxable year of the beneficiary to which the loss shall be carried over is the taxable year of the beneficiary in which or with which the estate or trust terminates. However, the last taxable year of the estate or trust (whether or not a short taxable year) and the first taxable year of the beneficiary to which a loss is carried over each constitute a taxable year for purposes of determining the number of years to which a loss may be carried over. For example: A trust distributes all of its assets to A, the sole remainderman, and terminates on December 31, 1954, when it has a capital loss carryover of $10,000 attributable to transactions during the taxable year of 1952. A, who reports on the calendar year basis, otherwise has

---

and such succeeding taxable year. For purposes of this paragraph a net capital gain shall be computed without regard to such net capital loss or to any net capital losses arising in any such intervening taxable years.

4. Section 642(h) *Unused loss carryovers and excess deductions on termination available to beneficiaries.*—If on the termination of an estate or trust, the estate or trust has—
 (1) a net operating loss carryover under section 172 or a capital loss carryover under section 1212, or
 (2) for the last taxable year of the estate or trust deductions (other than the deductions allowed under subsections (b) or (c)) in excess of gross income for such year,
then such carryover or such excess shall be allowed as a deduction, in accordance with regulations prescribed by the Secretary or his delegate, to the beneficiaries succeeding to the property of the estate or trust.

5. The legislative history of the Internal Revenue Code of 1954 clearly indicates that Congress enacted Section 642(h) in order to reverse the result reached in Neave v. Commissioner of Internal Revenue, 17 T.C. 1237 (1952) and other similar cases. The House report accompanying the Code noted:

Under subsection (d) [section 642(h) appeared in section 662(d) of the House bill] any unused net operating loss carryover, capital loss carryover, or deductions in excess of gross income (other than deductions for distributions allowed under section 661 or the deduction for personal exemption under section 642(b) upon the termination of an estate or trust are made available, in accordance with regulations, to the beneficiaries or remaindermen succeeding to the property. Under existing law, these unused loss carryovers are lost when the estate or trust terminates. (Cf. Neave, 17 T.C. 1237.) [H.R.Rep. No. 1337, 83rd Cong., 2d Sess. A201 (1954) U.S.Code Congressional and Administrative News, p. 4341].

ordinary income of $10,000 and capital gains of $4,000 for the taxable year 1954. A would offset his capital gains of $4,000 against the capital loss of the trust and, in addition, deduct under section 1211(b) $1,000 on his return for the taxable year 1954. The balance of the capital loss carryover of $5,000 may be carried over only to the years 1955 and 1956. For the treatment of the net operating loss carryover when the last taxable year of the estate or trust is the last taxable year to which such loss can be carried over, see § 1.642(h)–2.

Petitioners contend that the above Regulation, taken in conjunction with the Regulation governing the termination of trusts, effectively deprives them of the benefit of the capital loss carryover from the trusts for their fifth taxable year following the trust's termination. Thus under the pattern established by the Regulations, the "last taxable year" of each of the two trusts, i. e., January 1, 1956–August 3, 1956 and January 1, 1956–November 8, 1956, and the taxpayers' "first taxable year" (1956) are each counted as separate years for purposes of the capital loss carryover, with only 1957, 1958 and 1959 remaining available for future use of the 1955 carryover. This unique method of counting might possibly pass muster were it not for the existence of various other provisions which ensure that the trusts in the instant case will under no circumstances be able to avail themselves of the capital loss carryover in their last

taxable year. Thus, a trust is deemed terminated, not when the terminating event occurs, in this case the death of the life tenant, but when "the property held in trust has been distributed." Treasury Regulation Section 1.641(b)–3(b) (1956). All amounts accumulated between the terminating event and final termination are considered "amounts required to be distributed for the year in which they are received" Treasury Regulation 1.641(b)–3(c) (1956),[6] for which Section 661 of the Code permits the trust a deduction.[7] The present version of Treasury Regulation Section 1.641(b)–3(c) became effective on January 8, 1959, and is cited by respondent but has no application to the facts of the case before us. Consequently, as conceded by the Internal Revenue Service, when the terminating event occurs in one year and the corpus is not distributed until a subsequent year, which is the most typical and usual eventuality, it is impossible for the trust to have any taxable income in its last taxable year, and for all practical purposes such a trust would be unable to utilize a capital loss carryover in that last year.

The Commissioner does not dispute that Congress intended to incorporate the standards of Section 1212 of the Code into 642(h), thus, in 1956, making the capital loss carryover available for "five succeeding taxable years." Nevertheless, the Commissioner has argued that the trust's last taxable year is a taxable year as that term is defined in the Code[8] and should count as one of the

6. During the period between the occurrence of an event which causes a trust to terminate and the time when a trust is considered as terminated under this section, the income and the excess of capital gains over capital losses of the trust are in general considered as amounts required to be distributed for the year in which they are received. * * *.

7. See also Int.Rev.Code of 1954, Section 651.

8. Section 441. *Period for computation of taxable income*

* * * * *

(b) *Taxable year.*—For purposes of this subtitle, the term "taxable year" means—

* * * . * *

(3) the period for which the return is made, if a return is made for a period of less than 12 months.

Section 443. *Returns for a period of less than 12 months*

(a) *Returns for short period.*—A return for a period of less than 12 months (referred to in this section as "short period") shall be made under any of the following circumstances:

* * * * *

(2) *Taxpayer not in existence for entire taxable year.*—When the taxpayer is in existence during only part of what would otherwise be his taxable year.

five available years. The Commissioner is correct in assuming that a trust's last year even though a "short" year is a taxable year. However, there is nothing in the Code which requires that this last taxable year of a trust be counted as one of the five years during which the capital loss carryover can be employed.

 We are mindful of the considerable weight accorded Treasury Department Regulations, especially where, as here, the Congress has specifically directed the Treasury to promulgate Regulations. See Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831 (1948). Nonetheless, Regulations "are not absolute rules of law" and should not be followed where they are in conflict with the "design" of the applicable section of the Code. Mitchell v. Commissioner of Internal Revenue, 300 F.2d 533 (4th Cir. 1962). See also Corner Broadway-Maiden Lane, Inc. v. Commissioner, 76 F.2d 106 (2d Cir. 1935). Section 642 (h), which is remedial in nature, should be liberally construed in order to effectuate the Congressional objectives. See Bonwit Teller & Co. v. United States, 283 U.S. 258, 51 S.Ct. 395, 75 L.Ed. 734 (1931); Associated Telephone & Telegraph Co. v. United States, 306 F.2d 824 (2d Cir. 1962), cert. denied 371 U.S. 950, 83 S.Ct. 504, 9 L.Ed.2d 498 (1963). Those objectives, we think, included the extension of the capital loss carryover to remaindermen on the same basis as was made available to individual taxpayers under Section 1212. Section 1212, in 1956, provided for the use of the carryover over five distinct economic periods. Thus the Regulations subvert this intent by on the one hand requiring that a

trust's last year be counted and then on the other hand ensuring that there will be no taxable income in that year against which to offset the capital loss carryover. Moreover, our holding that the Regulation is unreasonable and clearly contrary to the intent of the Congress finds further support in the inability of the Internal Revenue Service to give any explanation of the reasons underlying the adoption of this technical and, to say the least, peculiar and unfair method of computation. See Craven, Proposed Regulations on Taxation of Estate and Trust Income, 95 Trusts & Estates 505 (1956) (expressing doubts about the correctness of Regulation 1.642(h)–1(b)).

In this connection it is worthy of note that, with Treasury Regulation 1.642 (h)–1 and its unwarranted method of calculating "the five succeeding taxable years" before it, the Congress amended Section 1212 in 1964 in such manner as clearly to give individual taxpayers not merely five succeeding years but an unlimited number of years within which to avail themselves of capital loss carryovers. And thereafter Treasury Regulation 1.642(h)–1 was changed and the unwarranted method of calculation disappeared. Int.Rev.Cum.Bull. 1965–2 at 264, 266 (1965).

The Tax Court determined that petitioners, in addition to being liable for deficiencies resulting from the disallowance of the 1955 capital loss carryover, also found them liable for an addition to tax under Section 6653(a) of the Code due to a reduction in the allowable capital loss carryover from 1956. But the respondent has not contested the Dorf-

---

Section 7701. *Definitions*

(a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—

\* \* \* \* \*

(23) *Taxable year.*—The term "taxable year" means the calendar year, or the fiscal year ending during such calendar year, upon the basis of which the taxable income is computed under subtitle A. "Taxable year" means, in the case of a return made for a fractional part of a year under the provisions of subtitle A or under regulations prescribed by the Secretary or his delegate, the period for which such return is made.

mans' contention that allowance of the 1955 carryover in its entirety will result in there being no income tax deficiency despite the decrease in the allowable carryover from 1956. Accordingly, the judgment appealed from is reversed in its entirety.